416 So.2d 103 (1982)
STATE of Louisiana
v.
Thomas MURDOCK.
No. 81-KA-3336.
Supreme Court of Louisiana.
June 21, 1982.
*104 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Bernard E. Boudreaux, Jr., Dist. Atty., J. Phil Haney, Asst. Dist. Atty., for plaintiff-appellee.
Paul J. DeMahy, St. Martinville, for defendant-appellant.
ROBERT L. LOBRANO, Justice Ad Hoc.[*]
Defendant Thomas Murdock was charged by a St. Martin Parish grand jury indictment with the crimes of aggravated rape, aggravated burglary, aggravated crime against nature (three counts) and attempted first degree murder, violations of La.R.S. 14:42; 14:60; 14:89.1; 14:27 (14:30). Defendant's trial began on May 26, 1981; however, after opening arguments and the victim's testimony, he changed his previously entered pleas of not guilty and not guilty by reason of insanity to guilty of one count of aggravated crime against nature, La.R.S. 14:89.1, and forcible rape, La.R.S. 14:42.1. The state dismissed the remaining counts. Thereafter, defendant was sentenced to serve thirty years at hard labor on the forcible rape conviction and ten years without benefit of probation, parole or suspension of sentence on the aggravated crime against nature conviction, with the sentences to run consecutively. Defendant now appeals on the basis that his sentences are excessive and violative of Article 1, Section 20 of the Louisiana Constitution.
STATEMENT OF FACTS
The testimony of the victim, Paula Bonin Boggs, is basically as follows. On the night of December 26, 1980 she had returned from a hospital visit with one of her three children at approximately 10:00 P.M. Because the doctor had instructed her to awaken her two year old child every two hours during the night, she called two friends to come over to assist her. As she watched T.V. with the lights out, she heard noises outside of her trailer. Thinking her friends had arrived, she unlatched the top latch of the door, and turned on the outside lights. At this time, a man with a stocking over his head pulled open the door and backed Ms. Boggs into the trailer. As she tried to resist him, he twisted her arm and pushed her into various things, including the Christmas tree. The assailant pushed her to the back bedroom but, upon seeing the other two sleeping children on that bed, he pushed her to the first bedroom where he shoved her down on the bed and unzipped his pants. The assailant told Ms. Boggs to undress but she kept begging him to leave her alone and not to hurt her children. He responded, "as long as you do what I tell you to do, nobody's going to get hurt." Then he pulled off Ms. Boggs' shirt and pants and made her have oral sex with him by pushing her head on his penis. Finished with that sexual assault, he threw her down on the bed again, removed a bottle of red capsules from his pants and forced the pills into her mouth. He continued to put capsules in her mouth until she had swallowed all but a couple. Her assailant then raped her after which he pulled the stocking mask above his mouth and had oral sex with her. She continued to fight but could not control herself because the medication continued to have a numbing effect.
*105 The assailant then pulled Ms. Boggs from the bed and allowed her to stand up and check on her children, as she had begged him. Meanwhile her attacker went through Ms. Boggs' medicine chest and removed two bottles of pills which he proceeded to force down her mouth again. The attacker forced Ms. Boggs back into the other bedroom where he had oral sex with her again by pulling her head down on his penis. Afterwards, he started to have sex with her again when her friends Buddy and Peggy started knocking at the trailer. The rapist held his hand over Ms. Boggs' mouth so she could not scream while threatening her children if she did yell. Meanwhile, Buddy came in through the back door. When he did, the rapist got up and ran. Buddy grabbed him; as they fell to the floor Buddy yelled to Ms. Boggs, "Run."
Ms. Boggs ran knocking on various trailer doors until she arrived at the highway where she flagged down a trucker, who notified the police by C.B. Ms. Boggs was taken to a hospital where her stomach was pumped and she was examined for rape and external bodily injuries.
ASSIGNMENT OF ERROR
Defendant argues that the imposition of the sentences to run consecutively was excessive,[1] and quotes the language from State v. Watson, 372 So.2d 1205, (La. 1979) wherein we stated:
"... we have pointed out that, for an offender without prior felony record, ordinarily concurrent rather than consecutive sentences should be imposed, especially where the convictions arise out of the same course of conduct within a relatively short period." id. at 1207.
La.C.Cr.P. Article 894.1[2] sets forth the standards which justify the imposition of imprisonment and/or suspension or probation. The purpose of this statute is to assist the court in the exercise of its broad discretion regarding the imposition of a fair and proper sentence in a particular case. State v. Douglas, 389 So.2d 1263 (La.1980) Further, the articulation by the trial judge in accordance with that statute facilitates review by this Court.
In the instant case, the trial judge gave an extensive factual basis for the imposition of consecutive sentences, enumerating *106 defendant's lack of a serious criminal history, his alcohol and drug abuse problem, and his mental problems, as well as the circumstances of the offense, the likelihood that defendant will commit another crime, and his potential for rehabilitation. The record clearly exhibits adequate compliance by the trial court with the sentencing requirements and guidelines of Art. 894.1. Furthermore it is our function, as a reviewing court to not merely substitute our judgment for that of the trial judge, but to determine whether that court abused its broad discretion in sentence imposition.
In view of the viciousness of the criminal act and the threat that defendant's conduct posed, not only to the victim, but to her three small children, the sentences of each charge for less than the maximum are not excessive. The victim believed that her life and that of her children were in danger. Defendant's actions in forcing the victim to swallow pills could have resulted in a homicide. Defendant admits to alcohol and drug problems, and although he tried two abuse programs he has not successfully dealt with those problems. The Pre-Sentence Investigation report reveals that defendant has a history of fighting and intoxication which resulted in his receiving a Discharge Under Other Than Honorable Conditions from the Army in 1978. The report further indicates that defendant has done little to help his problem. As this Court recently pointed out in State v. Carter, 412 So.2d 540 (La. 1982), consecutive sentences may be justified when, due to his past conduct or repeated criminality over an extended period, the offender poses an unusual risk to the safety of the public.
In view of the trial judge's extensive factual dissertation prior to sentencing, and the reasons set forth therein, we find no error in the consecutive sentences imposed. Accordingly, the conviction and sentence are affirmed.
NOTES
[*] Judges William Norris, III, and Fred C. Sexton, Jr., of the Court of Appeal, Second Circuit, and Judge Robert L. Lobrano of the Court of Appeal, Fourth Circuit, participated in this decision as Associate Justices pro tempore, joined by Associate Justices Calogero, Dennis, Watson and Lemmon.
[1] Article 1, Section 20, La.Const. of 1974 prohibits the imposition by law of excessive punishment.
[2] La.C.Cr. Art. 894.1 provides:

A. When a defendant has been convicted of a felony or misdemeanor, the court should impose a sentence of imprisonment if:
(1) There is an undue risk that during the period of a suspended sentence or probation the defendant will commit another crime;
(2) The defendant is in need of correctional treatment or a custodial environment that can be provided most effectively by his commitment to an institution; or
(3) A lesser sentence will deprecate the seriousness of the defendant's crime.
B. The following grounds, while not controlling the discretion of the court, shall be accorded weight in its determination of suspension of sentence or probation:
(1) The defendant's criminal conduct neither caused nor threatened serious harm;
(2) The defendant did not contemplate that his criminal conduct would cause or threaten serious harm;
(3) The defendant acted under strong provocation;
(4) There was substantial grounds tending to excuse or justify the defendant's criminal conduct, though failing to establish a defense;
(5) The victim of the defendant's criminal conduct induced or facilitated its commission;
(6) The defendant has compensated or will compensate the victim of his criminal conduct for the damage or injury that he sustained;
(7) The defendant has no history of prior delinquency or criminal activity or has led a law-abiding life for a substantial period of time before the commission of the instant crime;
(8) The defendant's criminal conduct was the result of circumstances unlikely to recur;
(9) The character and attitudes of the defendant indicate that he is unlikely to commit another crime;
(10) The defendant is particularly likely to respond affirmatively to probationary treatment; and
(11) The imprisonment of the defendant would entail excessive hardship to himself or his dependents.
C. The court shall state for the record the considerations taken into account and the factual basis therefor in imposing sentence.