477 So.2d 833 (1985)
STATE of Louisiana
v.
Samuel GARCIA.
No. 85-KA-209.
Court of Appeal of Louisiana, Fifth Circuit.
October 10, 1985.
*834 John H. Craft, Staff Appellate Counsel, Indigent Defender Bd., Gretna, for appellant.
John M. Mamoulides, Dist. Atty., Jo Ellen McMillen, Dorothy A. Pendergast, Asst. Dist. Atty., Gretna, (Louise Korns, Gretna, of counsel), for appellee.
Before CHEHARDY, BOWES and GRISBAUM, JJ.
CHEHARDY, Judge.
Samuel Garcia appeals his conviction of manslaughter, LSA-R.S. 14:31, for the killing of his wife. He received the maximum sentence, 21 years' imprisonment at hard labor.
Defendant raises three assignments of error: (1) that the court erred in admitting into evidence a written statement given by defendant; (2) that the court erred in sentencing defendant to an excessive sentence; and (3) any and all errors patent on the face of the record.

FACTS
Defendant is a 48-year-old native of El Salvador, Central America, trained as a radio/television announcer but working as a tour guide at the time relevant hereto. He had been in the United States as a resident alien for four years, living in Gretna, Louisiana, with his American-born wife, Alexandra Mitchell Garcia. They had two children under the age of six.
The crime occurred on March 1, 1983. For several days the Garcias had been having marital disagreements due to Mr. Garcia's fervent belief that his wife had been having an affair with another man. She had undergone an abortion on February 26. Mr. Garcia believed her pregnancy to be the result of adultery.
Late on the night of February 28, 1983 the Garcias began arguing. At some time after midnight the argument escalated into physical violence, resulting in Mrs. Garcia's death. She was stabbed eighteen times with a fishing knife and was struck on the head nine times with a hammer. The coroner's report assigned a stab wound to the heart as the primary cause of death.
After Mrs. Garcia was dead Mr. Garcia attempted suicide by swallowing pills, drinking detergent and slashing his throat. His attempt was unsuccessful and when morning came he telephoned the police. He greeted the investigating officer at the door with the statement, "I killed my wife." He was placed under arrest and was read the Miranda warnings, signed the "Rights of Arrestee" form, and was taken into custody. He was given the Miranda warnings twice thereafter, once in Spanish, indicated he understood them and signed the form. Subsequently he gave a confession through interpreters that was typewritten by one of the interpreters while he spoke it, which he signed.
Mr. Garcia was ultimately indicted for second-degree murder, tried by a judge without a jury, found guilty of manslaughter and sentenced to 21 years.

*835 ASSIGNMENT OF ERROR NUMBER 1
Defendant asserts the trial court erred in admitting his written statement into evidence. He concedes the statement was taken after he had been informed of and had waived his constitutional rights, but argues the trial court erred in admitting it into evidence because of "the lack of reliability inherent in the manner in which the statement was taken."
Defendant's native language is Spanish; at trial he testified he understands English well but has some difficulty translating his speech from Spanish to English. When taken in custody to Gretna Police Headquarters, defendant indicated to the interrogating officer, Detective Dunn, that he understood English. Dunn, however, obtained Spanish interpreters "just to be on the safe side."
The interpreters were Deputy Xavier Elvir and a civilian, Luis Carrillo. The questioning was conducted by Detective Dunn, who read defendant his rights in English while Deputy Elvir repeated them in Spanish. The defendant stated he understood his rights and signed a waiver.
Detective Dunn then asked the questions in English; Deputy Elvir repeated them in Spanish; Mr. Carrillo typed out the answers in English. Mr. Garcia answered mostly in English, occasionally in Spanish. His Spanish answers were interpreted for Detective Dunn by Deputy Elvir. When the statement was completed, Detective Dunn read it to Mr. Garcia in English, Deputy Elvir read it to him in Spanish and Mr. Garcia read it to himself. Detective Dunn asked Garcia "if everything in this statement was completely the truth, the way he said it," and Mr. Garcia responded "yes" in English. He then signed it and Detective Dunn signed it as a witness.
The relevant portions of defendant's statement, as typewritten, follow:
"We started a discussion about why she wasreceiving [sic] strangers at the house. She said that it was not true, that it was only imagination, and the discussion was getting hotter, raising the tone, up tothe [sic] point that in order not to discuss any more, I pretended to be asleep but she continued and insisted that if I continued making those claims that she was going to leave, and that she was going to take the chil dren [sic] with her. Something that I considered that it was fatal tome [sic] because I can not live without the children. We were in bed and I told herthat [sic] I was going tosleep [sic] in another room. She followed me with a fishing pole, and then I looked for a raiser [sic] blade, then I cut her, in the neck, when she felt that she was cut, she was touching blood fromthe [sic] wound and then she ran to the first floor, to look for an arm [sic] with which to hurt me. She had inher [sic] hand in the first floor, a hammer with which she treated [sic] me. Thenl [sic] took thehammer [sic] from her and hit her. When I saw her laying down in the floor I tried to cut myself, and decide [sic] to go to bed [sic] I move [sic] from bed to bed, and I was noised [sic] that I was bleeding, all over the bed, I went to sleep, I donot [sic] how long, when I woke up in the morning, I decide [sic] to call my bosses [sic] wife but there was no answer, then I decided to call the Police. And then the Police came."
He stated further that the discussion took place about one or two o'clock in the morning, in the master bedroom. When they went down to the living room and his wife swung the hammer in an attempt to hit him, he grabbed it from her: "At that time I went crazy and I do not know where I hit her. * * * I really do not remember how many times I hit my wife with the hammer." Asked whether he stabbed with a knife, he said, "Yes." Asked if this was after he hit her with the hammer, he said, "Yes." He could not remember how many times he stabbed her, but described the knife as a "fishing-type knife."
He said he then dragged his wife from the living room into the downstairs bathroom so the children would not see her. He stated he used the same razor blade to cut his own neck as he had used earlier on his wife. He also stated that he had been *836 drinking, and had had about ten beers, before and after the fight with his wife. He could not remember if his wife called for help when he was hitting her and he did not remember if his wife was alive or dead when he went upstairs afterwards.
On cross-examination defense counsel pointed out several errors in the typewritten confession: arm was used instead of arma, the Spanish word for weapon; treated instead of threatened; noised instead of nauseated; and raiser instead of razor. Detective Dunn said these were typographical errors. Mr. Carillo, who had typed the statement, explained he had typed these words by mistake. They supplied the correct words.
Defense counsel objected at trial to the admission of the statement because "the confession does not contain the exact words of the confessor [and] * * * is particularly confusing and mixed up on a vital point which shows whether or not the deceased, Alexandra Mitchell Garcia, was the aggressor, on the point where she threatened [or] did not threaten." The trial judge overruled the objection, stating he found the errors "inconsequential, of no importance, with regard to the total four-page confession." On appeal, the defense asserts the written confession was inherently unreliable because of the manner in which it was taken.
At trial defendant testified that he and his wife were in a bedroom upstairs arguing over her alleged extramarital affairs, that during the course of the argument she grabbed a knife from a fishing tackle box and that he grappled with her over the knife, cutting his own finger and inadvertently stabbing her abdomen. He then retreated downstairs but she followed him down and seized a knife and a hammer. A further scuffle ensued, during which he stabbed her and hit her with the hammer. He could not recall how many times he hit her or exactly what occurred during the death struggle. When he realized what he had done he was overcome with remorse, hence his suicide attempts.
There was no evidence that any substantial changes were made in reducing Mr. Garcia's oral statement to paper. The testimony of Detective Dunn, Deputy Elvir and Mr. Carrillo established that the document accurately recounts the events as described in the oral statement. Dunn and Carrillo freely admitted there were errors and supplied the appropriate corrections so the substance of the confession would be clear.
A statement given by a defendant need not be a verbatim record of the defendant's oral version. State v. Lafevre, 419 So.2d 862 (La.1982); State v. James, 447 So.2d 580 (La.App. 3 Cir.1984). Minor changes or alterations in a defendant's words by the person who records the confession are insufficient cause to suppress the confession as long as they do not so distort the confession as to make it useless. State v. Lefevre, supra.
The typographical errors did not so distort the confession as to make it useless. The trial judge found the errors inconsequential. The admissibility of a confession is first a question for the trial judge, and his decision will not be overturned unless it is not supported by the evidence. State v. Williams, 420 So.2d 1116 (La.1982). The defendant's trial testimony relating the events surrounding the killing was not inconsistent with the typewritten confession. Therefore, the defendant's objection to his statement as typed by Carrillo goes to the weight of the evidence rather than to its admissibility. See State v. Simmons, 328 So.2d 149 (La.1976). Accordingly, we find no merit in Assignment of Error Number 1.

ASSIGNMENT OF ERROR NUMBER 2
The defendant asserts that the trial court erred in sentencing him to an excessive sentence. After finding defendant guilty of manslaughter, the trial judge sentenced him to 21 years at hard labor, the maximum sentence under R.S. 14:31.
*837 In compliance with the sentencing guidelines of C.Cr.P. art. 894.1, the trial judge stated,
"I am convinced that you are capable of violent actions and would commit another crime if released. I'm convinced that the only place for you is a correctional institution for treatment which can be most effectively provided in such a type of institution.
"The homicide committed was of such a heinous nature that a lesser sentence would deprecate the seriousness of the crime.
"I have further taken into consideration the fact that you've not been guilty of criminal conduct in the past, that you enjoy a good reputation among your peers in the community, and that there was some provocation in connection with the offense."
On appeal, defendant asserts, "Despite the trial court's recitation of reasons for imposition of the maximum sentence in conformity with Article 894.1 of the Code of Criminal Procedure, it is urged that the maximum sentence is excessive in light of the facts and circumstances surrounding both the killing and Mr. Garcia's personal proclivities."
Defendant notes he had no record of criminal activity prior to this incident and states he is "a man with a spotless reputation in the community." He cites the testimony of the six character witnesses who appeared on behalf of him, that he is a "quiet man," a "peaceful man, a good father, a good friend, a good neighbor," that he is well-respected and of good reputation.
Further, he asserts the facts demonstrate that the killing was the result of considerable provocation, noting his firm conviction that his wife had been having an extramarital affair resulting in the aborted pregnancy and his own testimony that Mrs. Garcia started the violence. He also points out that he immediately comprehended the enormity of his act, leading to his attempted suicide.
Our state constitution prohibits cruel, excessive or unusual punishment. LSA-Const. Art. 1, § 20. A sentence is excessive if it is grossly out of proportion to the severity of the crime or if it is nothing more than the purposeless and needless imposition of pain and suffering. State v. Ratcliff, 416 So.2d 528 (La.1982). C.Cr.P. art. 894.1 represents a legislative attempt to guide the trial judge in thoughtfully imposing a sentence individualized to the offender as well as the offense and also serves as an aid in appellate review by offering insight in the trial court's reasoning process. State v. Robicheaux, 412 So.2d 1313 (La.1982).
It is readily apparent that the trial judge considered all applicable mitigating factors when sentencing defendant, but felt that the "brutal and senseless" nature of defendant's actions warranted the maximum sentence. He expressly stated he found defendant guilty of the lesser-included offense of manslaughter rather than second-degree murder because a reasonable doubt existed (as to whether defendant had the specific intent required to make the killing second-degree murder). He based the finding of manslaughter upon the defendant's past reputation, his conduct subsequent to the incident and the "entire evidence."
The defendant inflicted twenty-seven wounds upon the victim (eighteen knife wounds and nine hammer blows). The judge, even after considering the factors that mitigated in defendant's favor, obviously felt the sheer brutality of Garcia's act evinced dangerous proclivities and escalated the case to the most serious violation of the manslaughter statute.
A trial judge is given wide discretion in the imposition of sentences within statutory limits, and the sentence imposed by him should not be set aside as excessive in the absence of a manifest abuse of his discretion. State v. Smith, 437 So.2d 252 (La.1983). It is not the function of a reviewing court to substitute its judgment for that of the trial court, but rather to determine if the lower court abused its *838 broad sentencing discretion. State v. Murdock, 416 So.2d 103 (La.1982).
We find no abuse of the trial court's discretion in imposing the maximum sentence under the circumstances here. Accordingly, Assignment of Error Number 2 is without merit.
For the foregoing reasons, the conviction and sentence are affirmed.
AFFIRMED.