501 So.2d 889 (1987)
STATE of Louisiana
v.
Guy LOMBARD.
No. 86-KA-475.
Court of Appeal of Louisiana, Fifth Circuit.
January 12, 1987.
John M. Mamoulides, Dist. Atty., Henry Sullivan, Dorothy A. Pendergast, Asst. Dist. Attys., for plaintiff-appellee; Louise Korns, Office of the Dist. Atty., Twenty-fourth Judicial District, Parish of Jefferson, Gretna, of counsel.
John Wilson Reed, Lori R. Fregolle, Glass & Reed, New Orleans, Thomas Divens, Gretna, for defendant-appellant.
Before CHEHARDY, KLIEBERT and BOWES, JJ.
KLIEBERT, Judge.
Guy A. Lombard, defendant, was charged by grand jury indictment with the second degree murder of John St. Pierre in violation of LSA-R.S. 14:30.1. Defendant was found guilty as charged by a twelve person jury and sentenced to the mandatory *890 term of life imprisonment without benefit of parole, probation or suspension of sentence. Defendant's conviction and sentence were affirmed by this court in a prior opinion.[1] However, on defendant's application for certiorari the Supreme Court modified the verdict by rendering a judgment of conviction for manslaughter and remanded the case to the district court for sentencing.[2] On May 30, 1986 the defendant was sentenced to twenty-one years at hard labor with credit for time served. Defendant appealed, assigning the following errors: (1) the sentence imposed is excessive, and (2) the trial judge failed to sufficiently comply with La.C.Cr.P. art. 894.1.
The facts of this case have been set forth in two opinions to date, and we adopt herein the Supreme Court's recitation at 486 So.2d 107-108:
On the night of September 3, 1983, John St. Pierre, a seventeen-year-old senior at Ehret High School and varsity football player, and his girlfriend, Heidi Jeandron, were sitting in the bleachers of the West Jefferson Stadium watching a football game between two high schools, Shaw and O. Perry Walker. Also attending the game was defendant, a sixteen-year-old junior at Redeemer High School and junior varsity basketball player, who was standing at the top of one of the stadium ramps. After the football game had begun, Jeandron left her seat to go to the restroom. When she got to the ramp, defendant blocked her path. Jeandron asked if he had a problem. As she nudged her way past him, he responded that he would not call it a problem, but a passion. On her way back to her seat, Jeandron again had to push her way past defendant. Upon arriving at her seat, Jeandron told St. Pierre what had happened. St. Pierre approached defendant and said, "[i]f you say something to my girlfriend again, I'm going to kill you," to which defendant responded, "where is your girlfriend, I will go and tell her something." St. Pierre warned defendant that if anything remained to be settled, he would be back later. After St. Pierre had left, defendant remarked to a few persons standing around him that if St. Pierre returned, it would not be much of a fight because he had a knife on him which he would use.
Later, as St. Pierre and Jeandron were leaving the game, they passed defendant without incident; he remained at the top of the ramp. It is unclear how it started, but by the time St. Pierre and Jeandron reached the bottom of the ramp, defendant and St. Pierre were arguing. St. Pierre then said, "[i]f you want to fight me, we [can] go in the parking lot." Lombard refused this invitation to fight, but grabbed his genital area and made an obscene gesture toward St. Pierre. St. Pierre responded with, "that's your ass," handed his glasses to Jeandron and started up the ramp toward defendant. St. Pierre threw the first blow; then he grabbed defendant and hurled him against the railing. Defendant fell to his knees with St. Pierre on top of him. St. Pierre wrapped his right arm around defendant's neck in a stranglehold while twisting defendant's left arm behind his back. Defendant's right arm remained free enabling him to remove the knife from his pocket, flick off the sheath, and stab St. Pierre twice. The first, and fatal, wound was inflicted on the left side of his chest; the second on his upper right leg. An ambulance took St. Pierre to a nearby hospital where he was pronounced dead on arrival. Defendant was taken into custody on the ramp where the stabbing had occurred.
Defendant contends the trial court failed to sufficiently comply with La.C.Cr.P. art. 894.1 and imposed an unconstitutionally cruel and excessive sentence in violation of Article I, Section 20 of the Louisiana Constitution of 1974 and the VIII Amendment to the United States Constitution.
Article I, Section 20 of the Louisiana Constitution provides in part "No law *891 shall subject any person ... to cruel, excessive or unusual punishment ..." The VIII Amendment to the U.S. Constitution similarly provides "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." A sentence is excessive, even though within prescribed statutory limits, if it is grossly disproportionate to the severity of the crime and is nothing more than the purposeless and needless imposition of pain and suffering. State v. Davis, 449 So.2d 452 (La.1984). In making such determinations the appellate courts consider the punishment and the crime in light of the harm to society and gauge whether the penalty is so disproportionate as to shock our sense of justice. Davis, supra. The central purposes of sentencing are: (1) separation, which is intended for the protection of society; (2) rehabilitation; (3) deterrence, both of the individual defendant and of others who might otherwise be inclined to commit similar crimes; and (4) retribution, or an expression of community disapproval of law breaking. See United States v. Akers, 499 F.Supp. 43 (1980); See also United State v. Carlston, 562 F.Supp. 181 (1983).
The Supreme Court discussed the function of La.C.Cr.P. art. 894.1 with respect to sentencing in State v. Robicheaux, 412 So.2d 1313, 1319 (La.1982) as follows:
"Trial judges are granted great discretion in imposing sentences, but even sentences within statutory limits may be excessive under certain circumstances * * * Sentences must be individualized to be compatible with the offenders as well as the offenses. In deciding whether to confine a defendant or grant probation, the judge must consider certain factors enumerated in La.C.Cr.P. art. 894.1(A)(B). * * * This article entitles the defendant to such an articulation and represents a legislative attempt to guide the trial judge in thoughtfully imposing an appropriate sentence under the facts and circumstances of the particular case. Also this serves as an important aid to this court when called upon to exercise its constitutional function to review a sentence complained of as excessive. * * *"
In evaluating a sentence an appellate court will examine the reasons set forth by the sentencing court to determine whether there has been a manifest abuse of discretion. State v. Willis, 420 So.2d 962 (La.1982). It is not the function of the reviewing court to substitute its judgment for that of the trial court, but rather, to determine whether the court abused its broad sentencing discretion. State v. Murdock, 416 So.2d 103 (La.1982); State v. Honore, 451 So.2d 77 (5th Cir.1984).
When imposing sentence in the instant case the trial court stated:
"... although I did not have the opportunity of presiding over the trial of this matter, I have carefully read the entire trial transcript and I have thoroughly familiarized myself with the facts of this case. Further, prior to this date, I received and read in excess of seventy letters, that I received from school personnel, friends, neighbors, family and religious members on behalf of the defendant, Guy A. Lombard. Those letters were seeking leniency in this case. Similarly, prior to this date, I received and read in excess of seventy letters, that I received from the friends and family on behalf of the St. Pierre family. Further, I received petitions with hundreds of names on them on behalf of the St. Pierre family. Those people largely and strongly feel that the law should be enforced to the fullest extent by the imposition of the maximum sentence. Accordingly, again even though I did not hear this case originally, I feel that this Court is fully apprised of the sentiments and the emotion that exists in this situation. The Court has reviewed the trial record, reviewed and taken into consideration the trial record, and the appeal record, the Supreme Court judgment, the presentence investigation reports, all of the letters received and the sentencing information provided to this Court by defendant's counsel. I have reviewed the cases referred to by counsel for the defendant *892 and I have reviewed other cases that this Court has researched on its own. I quickly reached the conclusion that no two crimes are entirely the same, that circumstances and facts differ in each crime and the individuality of the defendant and the victim differ in each crime. I believe that the law particularly recognizes this situation. The law can best be exemplified by the penalty that is provided for the crime of manslaughter. Precisely, it reads, "Whoever commits manslaughter shall be imprisoned at hard labor for not more than twenty-one years." Obviously the Legislature, in its wisdom, left a great amount of latitute to the sentencing judge in the sentencing for the crime of manslaughter. It is pretty much from zero to twenty-one years. And a research of the jurisprudence reveals that there are sentences that span that range of permissible penalties.
So, it is the duty of this Court to individualize the sentence meeting the circumstances of this case and the Court is prepared to do that today. In addition to all of the information that I have reviewed and taken into consideration, I have considered the aggravating and mitigating circumstances. The Court finds that aggravating circumstances did exist. The Court feels that the defendant displayed a wanton disregard for human life. The stabbing of the victim was a brutal response to a fight, a fight that the defendant contemplated. Additionally, the victim was unarmed. The witnesses all testified that the fight lasted only moments. Not one of the witnesses testified that the defendant was in a life-threatening situation such that the using of a knife was in any way justified. This was a killing over a senseless situation, a situation that the defendant had the ability to avoid. The defendant's criminal conduct caused serious harm, the death of John St. Pierre, a seventeen-year-old high school senior and varsity football player. The Court is aware of the defendant's youthful age and I am aware that his record is clean. But, another teenager of youthful age with a clean record is dead. The Court finds that the defendant did contemplate that his criminal conduct would cause serious harm. The defendant brought a knife to a football game, a deadly weapon. He boasted of having the knife with him. He described how he was going to use the knife. And he mentioned the need of an ambulance, which was parked across the football field. The defendant associated the possession of a knife and his contemplated use of a knife with an ambulance. And he did use that knife.
The Supreme Court of the State of Louisiana concluded that provocation was present in this case and recognized provocation as a mitigating factor. That mitigating factor was taken into consideration by the Supreme Court by modifying the prior verdict of second-degree murder to a conviction of manslaughter. This Court finds that any further mitigation for the fact of provocation is completely unwarrented (sic). Certainly, the defendant cannot compensate the victim for his criminal conduct for the injuries sustained because the defendant took the victim's irreplaceable life.
This Court finds that the foregoing aggravating circumstances far outweigh the mitigating circumstances and that a lesser sentence than that this Court will impose would deprecate the seriousness of the defendant's crime. This Court also is of the believe [belief] that the defendant is in need of a custodial environment which can be provided most effectively by his commitment to an institution. It is therefore the judgment of this Court that the defendant be sentenced to twenty-one years at hard labor with credit for time served prior to sentencing and that the defendant be remanded to the custody of the Louisiana State Department of Corrections for implementation of the sentence."
It is readily apparent that the trial court meticulously considered the sentence to be imposed, and noted the applicable aggravating and mitigating circumstances.
*893 The factual basis for the considerations taken into account is readily evident upon review of the record and the prior opinions in this case. Given such extensive compliance with La.C.Cr.P. art. 894.1, our task is simply to determine whether the sentence imposed is too severe given the circumstances of the case and the background of the defendant. See State v. Nelson, 449 So.2d 161 (4th Cir.1984).
The defendant was sentenced to the maximum term for manslaughter. As a general rule, maximum sentences are appropriate only in cases involving the most serious violation of the offense, and the worst type of offender. State v. Telsee, 425 So.2d 1251 (La.1983). Because the defendant armed himself with a knife before attending a high school football game a young man in the prime of life and on the verge of a promising career was killed and his family forever shattered. While the defendant is a youthful first offender, the effect of this crime on the victim's family and the community cannot be overlooked. Given the reasons for the sentence as set forth by the trial court, which we adopt in toto, and in light of the fact the defendant is eligible for parole after serving one-third of the sentence,[3] we find no abuse of discretion which would warrant setting aside the sentence. Similar sentences have been imposed and upheld by this and other courts. See State v. Garcia, 477 So.2d 833 (5th Cir.1985) writ denied 481 So.2d 628 (La.1985); State v. Edwards, 476 So.2d 395 (2nd Cir.1985).
For the reasons assigned, the sentence is affirmed.
AFFIRMED.
NOTES
[1] 471 So.2d 782 (5th Cir.1985).
[2] 486 So.2d 106 (La. 1986).
[3] See LSA-R.S. 15:574.4 A(1). Eligibility for parole is an amelioratory factor which should be considered in gauging the heaviness of sentences. State v. Green, 418 So.2d 609 (La.1982).