852 So.2d 450 (2003)
STATE of Louisiana
v.
Dale Michael SCHEXNAIDER.
No. 03-144.
Court of Appeal of Louisiana, Third Circuit.
June 4, 2003.
*452 Paula Corley Marx, Louisiana Appellate Project, Lafayette, LA, for Defendant Appellant, Dale Michael Schexnaider.
James C. Downs, D.A., James M. Buck, A.D.A., Alexandria, LA, for Appellee, State of Louisiana.
Court composed of NED E. DOUCET, JR., Chief Judge, GLENN B. GREMILLION, and ELIZABETH A. PICKETT, Judges.
DOUCET, Chief Judge.
Defendant, Dale Michael Schexnaider, was charged by bill of information on May 17, 2000, with indecent behavior with a juvenile, a violation of La.R.S. 14:81, and forcible rape, a violation of La.R.S. 14:42.1. On June 23, 2000, Defendant entered pleas of not guilty. On June 15, 2001, and June 22, 2001, amended bills of information were filed. One week later, on June 22, 2001, the Defendant entered a plea of not guilty to the amended charge and waived his right to trial by jury. Trial commenced on June 26, 2001; however, a mistrial was granted. The bill of information was amended again on August 2, 2002. Thereafter, on August 6, 2002, the Defendant waived his right to trial by jury and proceeded to trial by judge. The Defendant was found guilty of forcible rape and indecent behavior with a juvenile on August 9, 2002. On October 7, 2002, the Defendant was sentenced to twenty years at hard labor, five years to be without benefit of probation, parole or suspension of sentence, with credit for time served on the charge of forcible rape. Defendant was also sentenced to five years at hard *453 labor, with credit for time served, on the charge of indecent behavior with a juvenile. The trial judge ordered the sentences to run consecutively.
Before sentencing, on August 16, 2002, Defendant filed a Motion for New Trial and a Motion in Arrest of Judgment. The Motion for New Trial was denied; however, the trial court failed to act on the Motion in Arrest of Judgment. A Motion to Reconsider Sentence was filed and denied on October 14, 2002. A Notice of Appeal was immediately filed following the denial of Defendant's Motion to Reconsider Sentence.

FACTS:
The Defendant was a friend of G.N. and V.N., the parents of K.N. and E.N. As the victims in this matter are minors, their initials and those of their family members will be used in accordance with La.R.S. 46:1844(W). Photography was one of the Defendant's hobbies. In May or June of 1999, the Defendant took photographs of K.N., then seven years old. While taking photos of K.N., the Defendant told K.N. to take her underwear off and took two pictures of her which form the basis of the charged offense of indecent behavior with a juvenile.
On Sunday, April 9, 2000, the Defendant took photographs of E.N., who was thirteen years old at the time. At the end of the photo shoot, the Defendant raped E.N. On Monday, April 10, 2000, E.N. told Denise Holt, the guidance counselor at Brame Junior High, she had been raped the previous day. Ms. Holt notified authorities, and at 10:58 a.m., Corporal David Billings, with the Rapides Parish Sheriff's Office, responded to the call. Detective Gary Billingsley, with the Rapides Parish Sheriff's Office, also went to Brame Junior High where he met with E.N. Detective Billingsley contacted E.N.'s father, informing him of the rape. The next day, April 11, 2000, E.N. was examined by Dr. Deborah Myers.
E.N. reported that she was raped by Mr. Dale, but did not know his last name. Detective Billingsley presented E.N. with a six-picture lineup on April 12, 2000. E.N. identified the Defendant from the photographs.

ERRORS PATENT:
In accordance with La.Code Crim.P. art. 920, all appeals are reviewed by the court for errors patent on the face of the record. After reviewing the record, we find there is one error patent. The Defense filed a Motion in Arrest of Judgment on August 16, 2002, which has not been ruled on by the trial court. La.Code Crim.P. art. 860 states: "A motion in arrest of judgment shall be in writing, shall state the ground upon which it is based, and shall be tried contradictorily with the district attorney." Additionally, La.Code Crim.P. art. 861 provides in part: "A motion in arrest of judgment must be filed and disposed of before sentence."
The Defendant's Motion in Arrest of Judgment reads as follows:
Double Jeopardy precluded this trial; Specifically, Mr. SCHEXNIEDER [sic] entered into a guilty plea regarding the same offense in Caddo Parish, Louisiana. properly prepare his defense for the scheduled Trial date. [sic]
On June 15, 2001, the Defense filed a Motion to Quash contending that the conduct complained of in the indecent behavior with a juvenile charge was the same conduct at issue in a pornography charge in Caddo Parish. According to defense counsel, this constituted double jeopardy. There was no evidence or testimony introduced into the record establishing that the Defendant was ever charged with violation of any of the rape statutes in Caddo Parish. Thus, we conclude that the Motion in *454 Arrest of Judgment dealt only with the charge of indecent behavior with a juvenile. Accordingly, this court has no choice but to vacate the sentence imposed for indecent behavior with a juvenile and remand the case for a contradictory hearing on the outstanding motion.

ASSIGNMENT OF ERROR NO. 1:
The Defendant contends there is insufficient evidence to prove his guilt of the forcible rape offense beyond a reasonable doubt.
The Defendant specifically contends there is insufficient evidence to convict Defendant due to internal "irreconcilable inconsistencies in the testimony of E.N." Alternatively, the Defendant asserts the State failed to prove E.N. was prevented from resisting the act by force or threats of physical violence under the circumstances in which she reasonably believed that such resistance would not prevent the rape.
E.N. testified that after the Defendant took pictures of her, they were sitting on the tailgate of the Defendant's truck drinking Dr. Pepper when the Defendant grabbed her face, kissed her and pushed her onto her back in the bed of his pick-up truck. She stated the Defendant proceeded to get on top of her, taking off her shoes and pants, then putting his penis in her vagina.
E.N. testified she did not recall the Defendant hitting or slapping her and she did not recall hitting, scratching, kicking, or biting the Defendant. She explained that when she get frightened, she freezes. She testified: "I was scared and I couldn't move. I couldn't say anything." E.N. stated that she was finally able to tell the Defendant "No," and when she told Defendant she was going to tell her friend Ryan, Defendant stopped. E.N. also testified that there was really nothing she could do to get the Defendant off her because from the time the incident started the Defendant had his weight on her. She further testified that there was no one around during or after the rape.
Denise Holt, Detective Billingsley and G.N. testified they did not observe any bruises, cuts, or scratches on E.N. However, Corporal Billings observed some abrasions and scratches on E.N.'s left wrist. The abrasions were not bandaged or bleeding and did not look severe. Considering E.N.'s account of what happened, we do not find the lack of bruises, cuts or scratches significant.
Dr. Deborah Myers examined E.N. on April 11, 2000, two days after the rape. According to Dr. Myers, E.N. reported to her that the Defendant "started to rub her knee then started kissing her and then forced her back and she felt, felt him go inside of her, and at that time she went blank." The exam revealed a fimbriated hymen, extra tissue around the vaginal opening; a tear in the hymen at six o'clock, which was noted as a notch in the exam; some abrasions to the labia, and a fresh looking abrasion or bruise at the six o'clock position. The labia was red, almost bruised in appearance, indicative of a forceful entry. Dr. Myers testified her findings during E.N.'s examination were compatible with forcible rape. Dr. Myers stated that she was not able to tell specifically what caused the tear to the hymen; however, she concluded the abrasions and tear occurred at the same time, probably within a week of the exam.
Dr. Yasser M. Nakhlawi reviewed Dr. Myers' report regarding E.N. We note that the initial portion of the transcript wherein Dr. Nakhlawi was called as a witness is missing. However, his testimony regarding his impression of Dr. Myers' report appears to be complete. Dr. Nakhlawi *455 testified that the hymen usually tears secondary to penetration between the five and seven o'clock positions. There would have to be a tremendous amount of stretching to tear the hymen in this area from a large object like a penis. Dr. Nakhlawi testified a hymen tear does not happen from the insertion of a finger or a small object. He opined it was not possible that digital penetration caused the tear. He also stated that a self-inflicted injury of this type would be very painful.
The Defendant testified the photo shoot stopped when he noticed something on his camera lense or the view finder and he decided it was time for a break. The Defendant stated he and E.N. sat on the tailgate and talked. E.N. suddenly started crying when the two discussed E.N.'s mother's illness. The Defendant testified that "When she started crying I put my arm around her, pulled her head to me and kissed her head and she exploded on me. She said, get off me."
Defendant denied either asking E.N. to take her clothes off or forcefully removing E.N.'s clothes. He further denied grabbing E.N.'s face and forcefully kissing her, molesting and/or having intercourse with her.
In State v. Lambert, 97-64 (La.App. 3 Cir. 9/30/98), 720 So.2d 724, this court held:
When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State ex rel. Graffagnino v. King, 436 So.2d 559 (La.1983); State v. Duncan, 420 So.2d 1105 (La.1982); State v. Moody, 393 So.2d 1212 (La. 1981). It is the role of the fact finder to weigh the respective credibility of the witness. Therefore, the appellate court should not second guess the credibility determination of the trier of fact beyond the sufficiency evaluations under the Jackson standard of review. See King, 436 So.2d 559, citing State v. Richardson, 425 So.2d 1228 (La.1983).
Id. at pp. 4-5, 726-27.
The Defendant points out several inconsistencies in the testimony at trial. First, the Defendant points out that Dr. Myers testified that E.N. indicated to her that she was unable to remember many details of the rape because she blacked out; however, she later recalled a myriad of details. Dr. Myers testimony indicates E.N. never told her she blacked out, rather E.N. stated that at one point she went blank.
Second, the Defendant asserts E.N. testified she did not eat dinner with the Defendant and her family that evening, but K.N. and the Defendant testified she did. K.N. testified E.N. ate dinner with her, her mother, her father, her cousin, her uncle and the Defendant. The Defendant testified E.N. ate dinner and sat directly across from him. G.N. testified E.N. did not eat dinner with them. E.N. testified she never ate dinner that night. However, she also testified she could have eaten dinner with her family, but she did not think she did. Considering that E.N. had been traumatized just an hour or so before, we do not find these inconsistencies significant.
Third, Defendant points out that E.N.'s testimony was inconsistent as to what clothing she was wearing when she was raped. E.N. testified she was wearing blue jean pants that were kind of faded, a white T-shirt, and a light purple sweater tied around her waist. In a statement given at the Children's Advocacy Center, *456 E.N. said she was wearing "Limited" pants that were "like white colored but they are faded." At trial, E.N. further explained that the pants were kind of white, but were blue jean material. Detective Billingsley testified that E.N. told him she was dressed in white at the time of the rapewhite shirt, white pants, white panties, white bra.
Upon examination of all of E.N.'s testimony, we do not find her descriptions of what she was wearing that day irreconcilable. From our reading of the record, it would appear that she was wearing, a white top and pants which were purchased from a store called The Limited. From her various descriptions of the pants it appears that they were badly faded denim jeans which she described at different times as faded, almost white or white. We do not find those descriptions inconsistent, but rather different ways of describing the same pants.
Finally, the Defendant contends E.N.'s testimony was contradictory as to how her clothes were removed prior to the rape and then put back on after the rape. Denise Holt testified E.N. told her the Defendant made her take her clothes off. E.N. testified the Defendant took off her shoes, then her pants, one leg at a time. E.N. testified that she may have told Ms. Holt that the Defendant made her take her clothes off, but she was not sure. She did not remember everything she told Ms. Holt. At trial, E.N. testified she was positive the Defendant took her clothes off. E.N. also testified that after the rape, her pants were hanging on the tailgate and she put them on while in a seated position. She was not quite sure, but she thought her pants were on before her feet hit the ground. In a previous statement, E.N. said she ran and put her clothes on and got in the truck. E.N. explained that she did not say that she got up and ran. She explained, "I was like in a hurry, like I was running to get my clothes on."
The Defendant concludes that because of these inconsistencies and because there was no DNA or other physical evidence to corroborate E.N.'s testimony, the Defendant's conviction should be reversed.
The judge made the following comments before making his ruling:
Now in every case there are some discrepancies in the way witnesses recall the facts of the case. This case is not unusual in that respect. Did the victim eat supper that night? There's some testimony she did. There's some testimony she did not. There's some testimony she ate supper but she ate after the others had finished their supper. But it is not unusual for people to see and recall matters somewhat differently. In this case, the differences are mostly on minor points. The real question in this case is whether or not the rape occurred.
....
This Court, accordingly accepts the testimony of E.N. and the two doctors and finds the defendant guilty as charged beyond a reasonable doubt on count two of forcible rape.
The inconsistencies pointed out by the Defendant do not concern the actual act of forcible rape. There are no contradictions in E.N.'s testimony regarding the actual act of forced intercourse with the Defendant. The trial court considered the testimony of all witnesses in this case and made a credibility determination that should not be second guessed by this court. Furthermore, "[t]he fact that the record contains evidence which conflicts with the testimony accepted by the trier of fact does not render the evidence accepted by the trier of fact insufficient." State v. Holley, 01-0254, p. 6 (La.App. 3 Cir. *457 10/3/01), 799 So.2d 578, 583, citing State v. Tompkins, 403 So.2d 644 (La.1981), appeal after remand, 429 So.2d 1385 (La.1982).
The following is well settled:
The testimony of the victim alone can be sufficient to establish the elements of a sexual offense, even where the State does not introduce medical, scientific or physical evidence to prove the commission of the offense. State v. Hotoph, 99-243 (La.App. 5th Cir.11/10/99), 750 So.2d 1036, 1045, writ denied, 99-3477 (La.6/30/00), 765 So.2d 1062 and 00-0150 (La.6/30/00), 765 So.2d 1066; State v. Hawkins, 99-217 (La.App. 5th Cir.7/2/99), 740 So.2d 768, 769; State v. Hubbard, 97-916 (La.App. 5th Cir.1/27/98), 708 So.2d 1099, 1104, writ denied, 98-0643 (La.8/28/98), 723 So.2d 415.
The credibility of a witness, including the victim, is within the discretion of the trier of fact, who may accept or reject, in whole or in part, the testimony of any witness. Id. "[T]he Jackson standard does not serve as a vehicle for a reviewing court to second guess the rational credibility determinations of the fact finder at trial." State v. Juluke, 98-341 (La.1/8/99), 725 So.2d 1291,1293.
State v. Williams, 00-981, p. 7 (La.App. 5 Cir. 4/11/01), 786 So.2d 805, 810, writ denied, 01-1377 (La.3/28/02), 812 So.2d 646. The case sub judice is stronger than the ones cited above in that, in the case sub judice, the State introduced medical evidence which supported the victim's testimony.
We find no error by the trial court's choosing to believe E.N.'s testimony over that of the Defendant.
The Defendant also contends the State did not prove the element of force or threats of physical violence. La.R.S. 14:42.1 provides in pertinent part:
A. Forcible rape is rape committed when the anal, oral, or vaginal sexual intercourse is deemed to be without the lawful consent of the victim because it is committed under any one or more of the following circumstances:
(1) When the victim is prevented from resisting the act by force or threats of physical violence under circumstances where the victim reasonably believes that such resistance would not prevent the rape.
Thus, in order to convict the Defendant, the State had the burden of proving: (1) an act of vaginal or anal intercourse; (2) without the lawful consent of the victim; and (3) where the victim is prevented from resisting the act by force or threats of physical violence under circumstances where the victim reasonably believes that such resistance would not prevent the rape.
E.N. testified the Defendant forcefully pushed her back and got on top of her. She testified she could not push the Defendant back because he was bigger than her, and she was pinned under the Defendant's weight. E.N. stated that she was in a state of shock. She testified she was scared and when she is scared she cannot move. Dr. Myers testified that her examination of E.N. revealed evidence consistent with forcible rape. Further, Dr. Yasser M. Nakhlawi, who reviewed Dr. Myers' report, testified that the hymen usually tears secondary to penetration between the five and seven o'clock positions. He stated that a hymen tear does not happen from the insertion of a finger or a small object, but rather from a large object like a penis. He also stated that a self inflicted injury of this type would be very painful.
The Defendant cites State v. Powell, 438 So.2d 1306 (La.App. 3 Cir.), writ denied, 443 So.2d 585 (La.1983), in support of his argument. In that case, the victim *458 approached the defendant's car asking for a ride. The defendant agreed to take the victim to her cousin's residence, but instead brought her to a secluded area and threatened to kill her when she refused to have sex with him. The victim stated the defendant slapped her in the face three or four times while threatening to kill her. She contended the defendant threatened to use a weapon which, he indicated, was under the seat. However, the victim never saw the weapon. The victim testified that she and the defendant removed their own pants and the defendant had sex with her. The court concluded there was no showing of resistance on the part of the victim and very little evidence that she was prevented from resisting by force or threats of physical violence. The court stated that the victim was afraid; however, she testified the defendant said he would not hurt her. All witnesses who saw the victim after the incident testified that they did not see any cuts, scrapes, bruises or evidence of any physical attack. The victim's testimony indicated she did not make any efforts to resist. The court held the state had not met its burden of proof.
Judge Stoker dissented, stating the following:
The victim in this case stated that she submitted because the defendant threatened to kill her if she did not. Although she did not state in so many words that she did not resist because she believed that resistance would not prevent the rape, that is the clear meaning of her testimony. If that meaning is not given to her testimony, it is tantamount to requiring a person threatened with rape to either be faced with a dangerous weapon or to resist to the utmost and, in either case, subject themselves to the possibility of great physical harm or death. This is resistance in the context of aggravated rape. Forcible rape requires less.
Id. at 1310.
The First and Fourth Circuits have found the majority opinion in Powell unpersuasive. See State v. Savario, 97-2614 (La.App. 1 Cir. 11/6/98), 721 So.2d 1084, writ denied, 98-3032 (La.4/1/99), 741 So.2d 1280 and State v. Burger, 531 So.2d 1163 (La.App. 4 Cir.1988), determination sustained by, 541 So.2d 842 (La.1989), on remand, 550 So.2d 1282 (La.App. 4 Cir. 1989), writ denied, 556 So.2d 1276 (La. 1990).
The facts in the case before this court are more similar to those in State v. Wilkinson, 00-339 (La.App. 5 Cir. 10/18/00), 772 So.2d 758, writ denied, 00-3161 (La.10/12/01), 799 So.2d 494. Although, in Wilkinson, a jury convicted the defendant of simple rape, in reviewing his conviction, the Fifth Circuit observed that evidence presented by the state was sufficient to convict the defendant of forcible rape.
The evidence offered by the State shows that the Defendant forcibly grabbed C.C., threw her to the ground, pushed down her clothing, laid on top of her and penetrated her vaginally several times. C.C., a fourteen-year-old, was frightened, weighted down by the backpack and did not know whether any action on her part would have caused him to do additional harm. She was thrown into a secluded area and could have reasonably believed that screaming would be futile.
Similar testimony from Coffman, police officers, and Dr. McCaslin, confirm that C.C. was extremely upset, but consistent, when relating the details of the incident. Further, medical evidence showed that C.C. sustained a tear at the *459 bottom of the hymen consistent with attempted penetration.
Id. at p. 15, 766-67.
The court held that, given the facts presented at trial, the evidence was sufficient to support the elements of forcible rape.
In State v. Hawkins, 504 So.2d 1132 (La.App. 5 Cir.1987), the victim was riding a bike near dark when the defendant grabbed him and his bike and brought the victim and the bike upstairs into an apartment. Once inside the apartment, the defendant locked the door, undressed himself and then the victim, and put his penis inside the victim's rectum for ten minutes. The victim testified he was forced against his will into the apartment, he was afraid and tried to escape, but the defendant was on top of him, thus, he could not move. The court held the evidence supported the verdict of forcible rape.
We find the facts in this case are more like those in Wilkinson, and Hawkins. Further we agree with Judge Stoker's dissent in Powell.
Accordingly, we find that the evidence and testimony introduced at trial establishes that Defendant used sufficient force against the victim to sustain the Defendant's conviction.

ASSIGNMENT OF ERROR NO. 2:
The Defendant contends the sentences imposed are excessive for this offender and offense.
Inasmuch as this court has determined that Defendant's Motion in Arrest of Judgment in connection with the charge of indecent behavior requires that the sentence on that charge be set aside, we will only consider the Defendant's sentence for forcible rape.
In State v. Walker, 96-112 (La.App. 3 Cir. 6/5/96), 677 So.2d 532, writ denied, 96-1767 (La.12/06/96), 684 So.2d 924, this court held:
Article 1, § 20 of the Louisiana Constitution of 1974, prohibits "cruel, excessive, or unusual punishment." A sentence which falls within the statutory limits may nevertheless be excessive under the circumstances. State v. Sepulvado, 367 So.2d 762 (La.1979); State v. Naquin, 527 So.2d 601 (La.App. 3 Cir. 1988). To constitute an excessive sentence this court must find that the penalty is so grossly disproportionate to the severity of the crime as to shock our sense of justice or that the sentence makes no measurable contribution to acceptable penal goals and, therefore, is nothing more than needless imposition of pain and suffering. State v. Campbell, 404 So.2d 1205 (La.1981); State v. Everett, 530 So.2d 615 (La.App. 3 Cir. 1988), writ denied, 536 So.2d 1233 (La. 1989). The trial judge is given wide discretion in imposing a sentence, and a sentence imposed within the statutory limits will not be deemed excessive in the absence of manifest abuse of discretion. State v. Howard, 414 So.2d 1210, 1217 (La.1982).
Id. at pp. 3-4, 534-35.
In State v. Iron, 00-1238, p. 10 (La.App. 3 Cir. 2/15/01), 780 So.2d 1123, 1128, writ denied, 01-1232 (La.3/15/02), 811 So.2d 898, reconsideration denied, 01-1232 (La.6/7/02), 817 So.2d 1142, this court reviewed the issue of compliance with La. Code Crim.P. art. 894.1, stating:
With respect to the issue of compliance with La.Code Crim.P. art. 894.1, this court stated in State v. Anderson, 95-1688, p. 4 (La.App. 3 Cir. 5/8/96); 677 So.2d 480, 483:
The Legislature has provided criteria to aid a sentencing court in determining whether a sentence of imprisonment should be imposed and *460 whether suspension of a sentence or probation is warranted. La.Code Crim.P. art. 894.1; State v. Klause, 525 So.2d 1076 (La.App. 3 Cir.1988). Paragraph C of Article 894.1 requires the court to state for the record the considerations taken into account and the factual basis used when imposing a sentence. The sentencing court need not articulate every circumstance or read through a checklist of items to comply with the requirements of La.Code Crim.P. art. 894.1. State v. Pontiff, 604 So.2d 71 (La. App. 3 Cir.1992). However, the record must affirmatively reflect that adequate consideration was given to the codal guidelines in particularizing the defendant's sentence. State v. Smith, 433 So.2d 688 (La.1983).
If there is an adequate factual basis for the sentence contained in the record, the trial court's failure to articulate every circumstance listed in Article 894.1 will not necessitate a remand for resentencing. State v. Cottingin, 476 So.2d 1184 (La.App. 3 Cir.1985), appeal after remand, 496 So.2d 1379 (La.App. 3 Cir.1986); State v. Morgan, 428 So.2d 1215 (La.App. 3 Cir. 1983), writ denied, 433 So.2d 166 (La. 1983); See also, Smith, 433 So.2d 688 and State v. Stein, 611 So.2d 800 (La. App. 3 Cir.1992). Even though art. 894.1 has undergone several major revisions, the reasoning used in these cases is still applicable.
As stated in State v. Cottingin, 476 So.2d 1184 (La.App. 3 Cir.1985), appeal after remand, 496 So.2d 1379 (La.App. 3 Cir.1986):
There are two underlying purposes of the codal requirement that the sentencing court articulate the specific reasons based on particular facts and considerations for imposing a sentence. First, it ensures that the sentence is particularized to the defendant. State v. Murdock, 416 So.2d 103 (La.1982). In addition, it aids the reviewing court in the determination of whether the sentence imposed is excessive by providing an actual indication of whether the sentencing court adequately considered the statutory guidelines. State v. Murdock, supra; State v. Forshee, 395 So.2d 742 (La.1981); State v. Perry, 470 So.2d 426 (La.App. 3 Cir.1985).
Id. at 1186.
The Defendant was convicted of forcible rape, a violation of La.R.S. 14:42.1, which provides in pertinent part: "Whoever commits the crime of forcible rape shall be imprisoned at hard labor for not less than five nor more than forty years. At least two years of the sentence imposed shall be without benefit of probation, parole, or suspension of sentence." Defendant was sentenced to twenty years at hard labor, the first five years to be served without benefits.
The Defendant specifically contends the court failed to particularize Defendant's sentence in accordance with La.Code Crim.P. art. 894.1 by failing to give sufficient weight to relevant mitigating factors. The Defendant lists the following as mitigating factors:
1) Defendant's prior criminal history does not include this type of offense;
2) The Defendant has been in therapy, thus seeking treatment and rehabilitation;
3) A lengthy sentence will create an undue hardship for the Defendant's elderly parents; and
4) The Defendant has obtained a GED and is capable of supporting himself and his family.
In his Motion to Reconsider Sentence, the Defendant did not specifically argue *461 the trial court failed to comply with Article 894.1. The Defendant asserted only that his sentences were excessive. However, in an over-abundance of caution, we will address this issue.
At sentencing, the judge noted:
And the court considered, and has considered, the arguments of both counsel. Mr. Schexnaider did admit taking the pictures of the youngest child. Mr. Schexnaider's prior criminal record was not of crimes of this particular type. And I'm certain that any prison term will work a hardship on his family. He should be commended for participating in therapy and the three other programs that he has participated in. On the other side, as indicated by Mr. Buck, in truth and in fact, there was deliberate cruelty here. Forcible rape. An aggravating factor certainly is the age of the victim, 13 years of age at the time, and the victim of the indecent behavior was eight years old. These are children preyed upon at a time when they are most vulnerable. And, even worse, this defendant did use a position of authority to obtain his way with these children. He was the responsible adult on these photo shoots. He was in charge. He was the close family friend.
We note that all the mitigating factors listed by the Defendant were addressed by the trial court except the Defendant's having obtained his GED and his ability to support his family.
The court is not required to list every aggravating and mitigating factor so long as the record reflects that it adequately considered the guidelines. State v. Smith, 433 So.2d 688 (La.1983); State v. Dunn, 30,767 (La.App. 2 Cir. 6/24/98), 715 So.2d 641. When the record shows an adequate factual basis for the sentence imposed, remand is unnecessary even in the absence of full compliance with art. 894.1. State v. Lanclos, 419 So.2d 475 (La.1982). The article does not require the court to assign any particular weight to any specific matters at sentencing. State v. Jones, 33,111 (La. App. 2 Cir. 3/1/00), 754 So.2d 392, writ denied, 00-1467 (La.2/2/01), 783 So.2d 385.
State v. Quiambao, 36,587, p. 12 (La.App. 2 Cir. 12/11/02), 833 So.2d 1103, 1110.
Accordingly, we find the trial court sufficiently complied with the guidelines set out in La.Code Crim.P. art. 894.1.
As to the length of Defendant's sentence, we note that in a case with facts very similar to this one, State v. Frith, 32,796 (La.App. 2 Cir. 12/8/99), 747 So.2d 1269, writ denied, 00-419 (La.1/26/01), 781 So.2d 1256, the court concluded a sentence of twenty years at hard labor, with ten years to be served without benefit of probation, parole or suspension of sentence, was not excessive for a defendant who had raped his thirteen-year-old niece.
Additionally, we note that Defendant plead guilty to attempted possession of a firearm by a convicted felon in Shreveport in 1999. Accordingly, Defendant's conviction for forcible rape makes him, at least, a second felony offender. Defendant was not billed as a habitual offender wherein he would have been exposed to a sentence ranging from twenty to eighty years. Considering all the circumstances, we cannot say the trial court abused its discretion when sentencing the Defendant. Accordingly, this assignment lacks merit.

DEFENDANT'S PRO SE ASSIGNMENT OF ERROR:
In a pro se brief with the court on May 7, 2003, Defendant alleges one assignment of error, i.e., that there is sufficient evidence to show that the attorneys at his first and second trials denied him effective assistance of counsel.
*462 Defendant's first trial ended in a mistrial. Thus, any alleged errors of counsel during the Defendant's first trial are not appealable. See La.Code Crim.P. art. 912.
In State v. Griffin, 02-1703, pp. 8-10 (La.App. 4 Cir. 1/15/03), 838 So.2d 34, 40, our brethren of the Fourth Circuit, with whom we agree, reviewed the law applicable to claims of ineffective assistance of counsel stating as follows:
Generally, the issue of ineffective assistance of counsel is a matter more properly addressed in an application for post conviction relief, filed in the trial court where a full evidentiary hearing can be conducted. State v. Prudholm, 446 So.2d 729 (La.1984); State v. Johnson, 557 So.2d 1030 (La.App. 4 Cir.1990); State v. Reed, 483 So.2d 1278 (La.App. 4 Cir.1986). Only if the record discloses sufficient evidence to rule on the merits of the claim do the interests of judicial economy justify consideration of the issues on appeal. State v. Seiss, 428 So.2d 444 (La.1983); State v. Ratcliff, 416 So.2d 528 (La.1982); State v. Garland, 482 So.2d 133 (La.App. 4 Cir.1986); State v. Landry, 499 So.2d 1320 (La. App. 4 Cir.1986).
The defendant's claim of ineffective assistance of counsel is to be assessed by the two part test of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); State v. Fuller, 454 So.2d 119 (La.1984). The defendant must show that counsel's performance was deficient and that he was prejudiced by the deficiency. Counsel's performance is ineffective when it can be shown that he made errors so serious that counsel was not functioning as the "counsel" guaranteed to the defendant by the Sixth Amendment. Strickland, supra, 466 U.S. at 686, 104 S.Ct. at 2064. Counsel's deficient performance will have prejudiced the defendant if he shows that the errors were so serious as to deprive him of a fair trial. To carry his burden, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, supra, 466 U.S. at 693, 104 S.Ct. at 2068. The defendant must make both showings to prove that counsel was so ineffective as to require reversal. State v. Sparrow, 612 So.2d 191, 199 (La.App. 4 Cir.1992).
This Court has recognized that if an alleged error falls "within the ambit of trial strategy" it does not "establish ineffective assistance of counsel." State v. Bienemy, 483 So.2d 1105 (La.App. 4 Cir. 1986). Moreover, as "opinions may differ on the advisability of a tactic, hindsight is not the proper perspective for judging the competence of counsel's trial decisions. Neither may an attorney's level of representation be determined by whether a particular strategy is successful." State v. Brooks, 505 So.2d 714, 724 (La.1987).
Of the numerous errors Defendant alleges were committed by counsel, many appear to fall "within the ambit of trial strategy." However, Defendant also sets out a number of alleged inconsistencies in the case which he asserts, had counsel investigated and questioned witnesses thoroughly, there would have been a different result at trial. Many of the alleged inconsistencies can be found in the exhibits attached to Defendant's brief. However, none of the those exhibits were introduced into evidence at the trial which resulted in the Defendant's convictions.
We cannot determine from the record what trial counsel did or did not do, what *463 documents counsel possessed, or the basis for any decision made by counsel. As stated above, a number of the various complaints made by Defendant appear to involve counsel's trial strategy.
In sum, the record before us is insufficient to make definitive findings as to the Defendant's claims of ineffective assistance of counsel. Thus, Defendant's claims must be relegated to post-conviction relief proceedings, where, if warranted, a full evidentiary hearing may be conducted to develop a sufficient record on the issues raised.

DISPOSITION:
The Defendant's conviction and sentence for forcible rape are affirmed. Defendant's sentence for indecent behavior with a juvenile is set aside and the case is remand for a contradictory hearing on the outstanding motion in arrest of judgment.
CONVICTION AND SENTENCE FOR FORCIBLE RAPE AFFIRMED; SENTENCE FOR INDECENT BEHAVIOR WITH A JUVENILE SET ASIDE AND CASE REMANDED WITH INSTRUCTIONS.