531 So.2d 1163 (1988)
STATE of Louisiana
v.
Brett BURGER.
No. KA 9006.
Court of Appeal of Louisiana, Fourth Circuit.
September 16, 1988.
*1164 Harry F. Connick, Dist. Atty., Sandra Pettle, Asst. Dist. Atty., New Orleans, for State.
Sherry Watters, Orleans Indigent Defender Program, New Orleans, for defendant.
Before GULOTTA, C.J., and WILLIAMS and ARMSTRONG, JJ.
ARMSTRONG, Judge.
Defendant, Brett Burger, was charged with and convicted of forcible rape, a violation of La.R.S. 14:42.1. Because he had previously been convicted of two felony offenses, he was billed as a habitual offender under La.R.S. 15:529.1 and sentenced to serve forty years at hard labor. Defendant now appeals his conviction.
The alleged rape occurred in the early morning hours of July 4, 1986 near the Melpomene Housing Project. Defendant and the victim, both residents of the project, began seeing each other approximately six weeks before the incident in question. The victim admitted that she and the defendant "went out" on two occasions, engaging in sexual intercourse each time. The two also spent time with one another, often talking together on the third floor balcony of their building. The victim testified that she ended her relationship with the defendant approximately one and a half weeks before the alleged rape. She claimed that during this period she only saw the defendant out on the balcony but did not "go out with him."
On the evening of July 3, 1986, about 9:30 p.m., she and a friend went to a bar in Jefferson Parish where she drank four beers and took one puff from a marijuana cigarette. The two women left the bar around 3:00 a.m. and the victim was dropped off at her project building. When she got to the third floor she saw the defendant who asked her to walk to the end of the balcony with him. She declined but he pushed her towards the balcony and demanded that she walk with him to a neighborhood liquor store. She declined but he reiterated his demand and pushed her. The victim stated that she was frightened and panicked. She walked with him to the liquor store where he purchased a beer.
They began walking back towards the project when, he first requested, then ordered, that she sit down on the front steps of a residence. As they sat on the steps the defendant told her that he wanted to make love to her. She did not wish to do so, and when he stood up she thought he *1165 was going to let her go home. Instead he struck her in the face, in her left eye. She began crying, and after telling her to shut up, he again stated that he wanted to make love to her. She responded no and he said, "yes you is." She again said no but he demanded that she stand up. She refused, causing him to yell "get up." She finally stood up and he pushed her, directing her to proceed to the rear of the residence. She refused and he continued to push her towards the backyard. She told him she had to use the bathroom and he said, "you're going to use that bathroom in the back." When they got to the rear of the residence he ordered her to "use the bathroom right here." She did so, and when she began to raise her panties and pants, he pushed her. She grabbed onto something to keep from falling but he pushed her down onto her stomach and proceeded to have anal and vaginal intercourse with her. He pressed on her back and she cried and hollered. She kept telling him to stop, that it hurt. He finally stopped and ordered her to get up. The victim testified that the attack lasted between thirty and sixty minutes.
The defendant then made her walk to three bars, two of which turned out to be closed. He intended to make the victim prostitute herself to earn some money. As they began walking he was holding her from behind. She was scared, hurt and was crying. She said she didn't know what to do. He told her to stop crying and shut up. She wouldn't and he hit her in her right eye. The first bar they arrived at was closed. At the second they entered and the defendant announced that the victim was for sale for sexual purposes. Someone told them to get out and they walked a little further down the street. He then told her to go into a third bar and ask for a man to "bring you to a motel." Before she went he stated that he didn't like the way she was walking and hit her in the eye. The third bar was also closed and they began walking towards the bus station where he wanted her to prostitute herself to a cab driver. It was dawn about this time. Inside the bus station defendant went to the restroom. Before he did he threatened to kill the victim if she left and told her that he had someone watching her. After he returned the victim feigned nausea three times, going into the women's restroom each time for up to ten minutes. They finally left the bus station about 7:00 a.m. and walked back to the project. In the project the victim walked away from the defendant back to her apartment where she telephoned the police.
The police arrived about 7:30 a.m. to speak with the victim. Detective Mason Spong accompanied the victim to the scene of the alleged crime. Detective Spong testified that the victim was in pain and had a difficult time walking. He recalled that she could not sit in a normal position but had to lean from side to side. Another officer also testified that the victim had a hard time walking and walked as if she were in extreme pain. Detective Spong testified that he interviewed occupants of the residence where the attack allegedly occurred but none of them recalled hearing anyone screaming in the backyard that night. Detective Spong returned to the victim's apartment to get some further information before transporting her to Charity Hospital. While there he knocked on the door of defendant's mother's apartment which was next to the apartment in which the victim was living. Defendant and his mother came to the door, and the victim, who was standing near the officer, identified the defendant as the man who raped her.
At Charity Hospital the victim was examined by Dr. Sheldon Latos who testified that she had a small laceration on her lip which was consistent with a blow to the face. He found no other external signs of injury such as bruising or lacerations to the face or upper body. A genital-rectal exam revealed three superficial tears in the rectal area and one at the vaginal opening. The doctor defined a superficial tear as one not bleeding and not requiring suturing or other medical care. He also noted that the victim's cervix was reddened and accompanied by a small abrasion. All of these findings, Dr. Latos confirmed, were consistent with a rape. He stated that the *1166 lacerations and their locations were textbook examples of results of forced sexual activity or very physical sexual activity. He admitted, however, that one cause of a reddened cervix is gonorrhea and that the victim had an active case of gonorrhea at the time of the examination. Dr. Latos also testified that roughly thirty-three percent of the time, consensual anal sex without the use of a lubricant can result in lacerations such as those found in the victim's anal area.
Dr. Latos found seminal secretions in the victim's vagina. Further tests showed that there had been sexual activity within the previous twenty-four hours, and Dr. Latos opined, it had most likely occurred recently. Dr. Lato's examination was performed around noon on July 4th and he stated that his findings were consistent with a rape having occurred between 3:00 and 4:00 a.m. that morning. It was later stipulated by counsel for both sides that there had been an act of intercourse between the defendant and the victim; although the stipulation did not specify a time of occurrence.
Veo Brumfield lived in the same apartment as the victim. He was living with the woman who rented the apartment, Elaine Robinson. The victim was temporarily living with Brumfield and Robinson. Brumfield testified that the victim and the defendant saw each other often, staying out together until early in the morning. He testified that he saw the victim and defendant together on the balcony on July 1st, some three days before the alleged rape. He said they were "hugged up."
The victim also testified that the defendant's mother attempted to coerce her into dropping the charges against her son. The alleged coercion consisted of a threat by the mother that the defendant would do something if she did not drop the charges, and an offer by her to pay the victim's medical bills for treatment of her rectal injuries if she would drop the charges. The victim did attempt to get the charges dropped on the evening of July 4th. She was accompanied to Magistrate Court by her friend Elaine Robinson and the defendant's mother. She was told to speak with an assistant district attorney the next week. The defendant's mother also accompanied the victim on that visit when the prosecutor told her to contact him later after he familiarized himself with the details of the case. The defendant's mother, Mary Burger, denied ever threatening the victim or soliciting her to drop the charges but admitted accompanying her to court and the prosecutor's office. She also admitted that she didn't like her son's relationship with the victim. She testified that when the victim returned from the hospital examination on July 4th she said to her, "Ms. Mary, I wouldn't have called the police, but when I saw my face I got mad. No man has ever slapped me before." The victim denied ever making such a statement.
Jules Edwards, an attorney with the Orleans Indigent Defender Program, was on duty in Magistrate Court on the day of the defendant's initial appearance. He spoke with the victim when she showed up seeking to have the charges dropped. The next week the victim sought his advice. Mr. Edwards testified that the victim, Ms. Bonnet, related to him that on the night in question she wanted to be with the defendant, and "kind of" wanted to have sex, but at the same time "kind of" didn't. The victim denied making these statements.
The defense presented a physician, Dr. Vincent Culotta Jr., whose specialty was obstetrics and gynecology. Dr. Culotta testified that more commonly than not you would expect to find superficial lacerations in the anal area of a person who consenually submits to anal intercourse without using a lubricant. The defense recalled Detective Spong who read portions of a transcript of his testimony given at a previous hearing. Detective Spong recalled that the victim informed him during an interview that the defendant came to her door, presumably in the early morning hours of July 4th, and asked her to take a walk so they could "settle" their relationship. She allegedly told Detective Spong that she agreed, left her apartment, and walked down the street with the defendant. The rest of her previous statement to Detective Spong tracked her testimony given at trialshe *1167 was forced into the backyard of a residence and raped by the defendant. She also allegedly told Detective Spong that she broke off her relationship with the defendant because he was too physical with her and treated her too rough. The victim denied telling Detective Spong that she agreed to walk with defendant to "settle" their relationship and further denied telling him that she broke off the relationship because defendant treated her roughly.
On appeal defendant raises one assignment of error. He claims that the State failed to present sufficient evidence to prove that he committed forcible rape. Before addressing that assignment of error we note that when imposing sentence the trial judge failed to state that at least two years of the sentence shall be without benefit of probation, parole or suspension of sentence as required under La.R.S. 14:42.1. However, no error exists because the trial judge did not suspend the sentence and place the defendant on probation and because this defendant, a third offender, is not eligible for parole. La.R.S. 15:574.4. A review of the record reveals no other errors patent.
The elements of the offense of forcible rape are: 1) the act of anal or vaginal sexual intercourse; 2) with a male or female person who is not the spouse of the offender; 3) without lawful consent of the victim; 4) where the victim is prevented from resisting the act by force or threats of physical violence under circumstances where the victim reasonably believes such resistance would not prevent the rape; 5) emission is not necessary and any sexual penetration, vaginal or anal, however slight is sufficient to complete the rape. La.R.S. 14:41; La.R.S. 14:42.1; State v. Moore, 444 So.2d 253 (La.App. 1st Cir.1984).
The standard for review when considering the sufficiency of the evidence to support a criminal conviction is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Wright, 445 So.2d 1198 (La.1984).
The defense argues that the State failed to prove the victim was prevented from resisting the attack because of force or threats of violence under circumstances where she reasonably believed such resistance would not prevent the rape.
In support of his argument, the defendant relies on State v. Powell, 438 So.2d 1306 (La.App. 3rd Cir.1983). In Powell the court reversed a forcible rape conviction concluding there was no evidence indicating that the victim was "prevented from resisting the act by threats of force or physical violence under the circumstances." Id. at 1308. Emphasis added. The defendant claimed that he gave the alleged victim a ride but that no sexual intercourse occurred. The victim claimed that she got into the defendant's car because he agreed to bring her to her cousin's house; however, he brought her to a secluded area, slapped her several times, threatened to kill her, and threatened her with a weapon she never saw. There was no evidence, however, that the victim sustained any cuts, bruises, or other external injuries as a result of the slaps. Then, the defendant and the victim each partially disrobed and engaged in intercourse. Construing the evidence in a light most favorable to the prosecution, the appellate court did not feel that any rational trier of fact could have found beyond a reasonable doubt that the victim was prevented from resisting the act by force or threats of physical evidence under cirucmstances where she could have reasonably believed that such resistance would not prevent the rape. There was a strongly worded dissent which suggested that the majority's analysis and holding would require resistance in the context of aggravated rape when in fact forcible rape requires no actual resistance.
We do not find the majority opinion in Powell, supra persuasive. In State v. Brown, 508 So.2d 118 (La.App. 4th Cir. 1987), writ denied, 513 So.2d 1205 (La. 1987), this court affirmed the forcible rape convictions of two defendants. Both defendants were unarmed when they abducted *1168 the victim who had danced with one of them earlier in the evening. The victim was beaten by the defendants. At trial she testified that she was scared and was forced to submit to intercourse with the defendants. In State v. Hawkins, 504 So.2d 1132 (La.App. 5th Cir.1987), the appellate court affirmed the convictions of the defendant for the forcible rape of a thirteen-year-old boy. The victim testified that the defendant forced him to go inside of his apartment where the defendant locked the door, undressed the youth, and sodomized him. The victim testified that he was afraid and never encouraged the defendant or consented to the act. In both of these cases the evidence mentioned concerning the elements of force and the subjective state of mind of the victims, when viewed with other evidence, was sufficient to support convictions for forcible rape.
In the case at bar the jury obviously gave considerable credence to the testimony of the victim insofar as the alleged rape incident was concerned. It is apparent that the jury was not swayed by the attacks on the victim's credibility. In his brief on appeal defendant attacks the credibility of the victim. Issues of credibility are within the sound discretion of the trier of fact whose determination as to such should not be disturbed on appellate review unless clearly contrary to the evidence. See State v. Richardson, 425 So.2d 1228 (La.1983); State v. Butler, 450 So.2d 764 (La.App. 5th Cir.1984). A seemingly more restrictive rule of appellate review in criminal cases was enunciated by the Louisiana Supreme Court in State v. Rosiere, 488 So.2d 965 (La.1986). The court stated, "It is not the function of an appellate court to assess credibility and reweigh the evidence." Despite the evidence which might have been interpreted as adversely affecting the victim's credibility as a witness, we are unable to say that the credibility given to the victim's testimony by the jury was clearly contrary to the evidence.
The evidence other than the victim's testimony established that (1) the victim was not the spouse of the defendant; (2) the defendant had vaginal and probably anal, intercourse with the victim; and, (3) that the act of vaginal intercouse could have occurred around 3:30 a.m. or later on July 4, 1986. Accepting the victim's testimony it was established that, at approximately 3:30 a.m. on the morning of July 4, 1986, the defendant forced her to accompany him, pushing her and ordering her to walk with him. The victim was frightened, a little intoxicated, and confused. Because of her state of mind the defendant was able to dominate her. He struck her, demanded that she make love to him, and despite her protestations, pushed her towards the rear of a residence. The victim did not wish to have intercourse with the defendant that morning. He pushed her onto her stomach and raped her anally and vaginally as she cried out and begged him to stop. The subsequent actions by the defendant, marching the victim to three bars and the bus station demanding that she prostitute herself, are indicative of the domination and control he had over her.
Although during her testimony the victim did not parrot the substance of La.R.S. 14:42.1, viewing her testimony in a light most favorable to the prosecution, we find that any rational trier of fact could have found that the defendant, who was not the spouse of the victim, had anal or vaginal sexual intercourse with the victim without her consent because the victim was prevented from resisting the act by force or threats of physical violence under circumstances where the victim reasonably believed that such resistance would not prevent the rape.
For the foregoing reasons the defendant's conviction and sentence are affirmed.
AFFIRMED.