NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

KA 06-1453

STATE OF LOUISIANA

VERSUS

GEORGE COMMETA JACOBS

**********

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 273,440
HONORABLE DONALD THADDEUS JOHNSON, DISTRICT JUDGE

**********

JOHN D. SAUNDERS
JUDGE

**********

Court composed of Sylvia R. Cooks, John D. Saunders, and Michael G. Sullivan, Judges.

AFFIRMED AND REMANDED WITH INSTRUCTIONS.

James C. Downs
District Attorney
9th Judicial District Court
701 Murray Street
Alexandria, LA 71301
(318) 473-6650
Counsel for Plaintiff:
State of Louisiana

**Michael W. Shannon**
**Assistant District Attorney**
**9th Judicial District Court**
**P.O. Box 1472**
**Alexandria, LA 71309**
**(318) 473-6650**
**Counsel for Plaintiff:**
**State of Louisiana**

**Edward K. Bauman**
**Louisiana Appellate Project**
**P. O. Box 1641**
**Lake Charles, LA 70602**
**(337) 491-0570**
**Counsel for Defendant:**
**George Commeta Jacobs**

**George Commeta Jacobs**
**Louisiana State Penitentiary**
**Hickory 4**
**Angola, LA 70712**
**In Proper Person**

**SAUNDERS, Judge.**

On June 14, 2004, the Defendant, George Commeta Jacobs, was charged by bill of information with one count of forcible rape, a violation of La.R.S. 14:42.1, and one count of second degree kidnapping, a violation of La.R.S. 14:44.1. The Defendant entered a plea of not guilty on June 25, 2004.

Trial by jury commenced on February 22, 2006, and the jury returned a verdict of guilty as charged on February 23, 2006. On April 3, 2006, the Defendant was sentenced to twenty years at hard labor without the benefit of probation, parole, or suspension of sentence for each conviction; the sentences were ordered to run consecutively. Defense counsel then made an oral motion to reconsider sentence and an oral motion for appeal. The motion to reconsider was denied on September 22, 2006.

The Defendant is now before this court asserting two assignments of error. In his brief, the Defendant contends that the evidence is insufficient to support his convictions and that his trial counsel was ineffective. We find that the evidence supports a conviction for forcible rape, as well as a conviction for second degree kidnapping. Additionally, we find that the Defendant's claim of ineffective assistance of counsel should be relegated to post-conviction relief.

**FACTS:**

The Defendant was convicted of kidnapping and forcibly raping V.C. on February 27, 2004.[1] The facts are thoroughly discussed in connection with the Defendant's assignment of error which challenges the sufficiency of the evidence used to convict him.

---

[1] The initials of the victim, and her relatives, will be used in accordance with La.R.S. 46:1844(W).

## ERRORS PATENT:

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, we find there are two errors patent and one issue worth noting.

First, the trial court failed to deny the Defendant eligibility for diminution of sentence on the forcible rape count. Thus, the Defendant received an illegally lenient sentence for that offense. Louisiana Revised Statutes 15:537(A) requires that diminution of sentence be denied to a person who is sentenced to imprisonment for a stated number of years or months and is convicted of, or pleads guilty to, certain sex offenses, including forcible rape, a violation of La.R.S. 14:42.1.

Recently, this court addressed this issue in *State v. S.D.G.*, 06-174 (La.App. 3 Cir. 5/31/06), 931 So.2d 1244:

> Louisiana Revised Statutes 15:537(A) requires that diminution of sentence be denied to all offenders who are convicted of or plead guilty to sex offenses, including aggravated rape and aggravated incest. Here, the trial court failed to deny the defendant diminution eligibility under La.R.S. 15:537(A) for both sentences imposed. In *State v. G.M.W., Jr.*, 05-392, p. 2 (La.App. 3 Cir. 11/2/05), 916 So.2d 460, 461, the court stated:
>
> > We note that the second paragraph of La.R.S. 15:537 is clearly directed to the sentencing court, and the trial court's failure to include a denial of diminution of sentence thereunder renders Defendant's sentences illegally lenient. Pursuant to *State v. Williams*, 00-1725 (La.11/28/01), 800 So.2d 790 and La.Code Crim.P. art. 882, this court is authorized to recognize and correct illegally lenient sentences.
>
> Here, the trial court's failure to deny diminution of sentence renders the defendant's sentences illegally lenient. Therefore, we amend the defendant's sentences to reflect that diminution eligibility is denied

2

> pursuant to La.R.S. 15:537(A). We also instruct the trial court to make a notation in the minutes reflecting the amendment.

*Id.* at 1247.

Likewise, in the present case, we amend the Defendant's sentence for forcible rape to reflect that he is not eligible for diminution of sentence, pursuant to La.R.S. 15:537. As in *S.D.G.*, the trial court is instructed to note the amendment in the court minutes. *See also*, *State v. Fontenot,* 06-226 (La.App. 3 Cir. 7/12/06), 934 So.2d 935 (same conclusion, but due to the fact that the case was remanded for the correction of other errors, the *trial court* was instructed to deny eligibility for diminution of sentence).

Second, there is no indication in the record that the trial court advised the Defendant of the prescriptive period for filing an application for post-conviction relief. Louisiana Code of Criminal Procedure Article 930.8 requires the trial court to advise a defendant of the prescriptive period at sentencing. Accordingly, we remand the case and instruct the trial court to inform the Defendant of the Article 930.8 prescriptive period by sending appropriate written notice to him within ten days of the rendition of this opinion and to file written proof that he received the notice in the record.

Finally, we note that although the penalty provisions for both forcible rape and second degree kidnapping mandate that the sentences imposed be served at hard labor, the trial court failed to state that the sentences imposed in the present case were to be served at hard labor. We note, however, that at the original sentencing hearing, the trial court "remanded [the Defendant] to the Rapides Parish Sheriff's Department, pending custody with the Department of Corrections." Additionally, at the hearing on the motion to reconsider sentence, the trial court remanded the Defendant to the

3

custody of the Department of Corrections. Pursuant to La.R.S. 15:824(C), "only individuals actually sentenced to death or confinement at hard labor shall be committed to the Department of Corrections." Thus, confinement to the Department of Corrections is necessarily confinement at hard labor. For this reason, we find no error patent.

## ASSIGNMENT OF ERROR NO. 1:

In his first assignment of error, the Defendant contends that the verdict of the jury is contrary to the law and evidence, as there was insufficient evidence, when viewed in a light most favorable to the prosecution, for the jury to find him guilty of forcible rape and second degree kidnapping beyond a reasonable doubt.

> In evaluating the sufficiency of the evidence to support a conviction, a reviewing court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found proof beyond a reasonable doubt of each of the essential elements of the crime charged. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State v. Captville*, 448 So.2d 676, 678 (La.1984).

*State v. Leger*, 05-11, p. 91 (La. 7/10/06), 936 So.2d 108, 170.

The Defendant was convicted of second degree kidnapping and forcible rape. Louisiana Revised Statutes 14:42.1 defines forcible rape as follows:

> A. Forcible rape is rape committed when the anal, oral, or vaginal sexual intercourse is deemed to be without the lawful consent of the victim because it is committed under any one or more of the following circumstances:
>
> (1) When the victim is prevented from resisting the act by force or threats of physical violence under circumstances where the victim reasonably believes that such resistance would not prevent the rape.

Accordingly, the State was required to prove (1) the Defendant had anal, oral, or vaginal sexual intercourse, regardless of the degree of penetration, with V.C.; (2) V.C. did not consent to the act of sexual intercourse; (3) V.C. was prevented from

4

resisting by force or threats of physical violence; and (4) V.C. reasonably believed that resistance would not prevent the rape.

Louisiana Revised Statutes 14:44.1 defines second degree kidnapping as follows:

A. Second degree kidnapping is the doing of any of the acts listed in Subsection B wherein the victim is:

. . . .

(3) Physically injured or sexually abused;

. . . .

B. For purposes of this Section, kidnapping is:

. . . .

(2) The enticing or persuading of any person to go from one place to another. . . .

Accordingly, the State was required to prove the Defendant enticed or persuaded V.C. to go from one place to another and that she was physically injured or sexually abused by the Defendant during that time.

V.C. testified that in February 2004, she was walking to her mother's home when she saw the Defendant, whom she had met in the past. The Defendant asked her where she was going, and he then offered her a ride, which she accepted. V.C. told the Defendant the street he needed to turn onto; however, he passed up the street and said he didn't give a f_ _ _ . V.C. testified that she began "[t]alking back" to the Defendant and he told her to shut the f_ _ _ up and, if she did not, he would beat the f_ _ _ out of her. V.C. further testified that, at that point, she told the Defendant, "If I go home with my face messed up, my mama and daddy," and the Defendant said he

5

did not give a f_ _ _ about her mother, and then hit her in the mouth, busting her lip. The Defendant then stopped at a vacant house.

Once the two were stopped, but still inside the car, the Defendant told V.C. to take her clothes off. V.C. testified that she slowly began taking her clothes off and the Defendant told her to hurry up. V.C. further testified that the Defendant was very angry and kept saying he was going to f_ _ _ up or beat her face. After her clothes were off, V.C. testified that the Defendant told her to lay back, and once she did so, he retrieved a condom from the glove box and attempted to have sex with her. However, V.C testified that the Defendant could not obtain an erection. He then retrieved a second condom and made her put the condom on him. V.C went on to testify that the Defendant told her that "if that didn't work at the time, I had to, or do the -- the oral sex, or whatever." She testified that she "just couldn't do it. And I told him he just do what he got to do to me because I couldn't perform that, because I ain't never did that before." She went on to testify that she then got into the back seat, at the Defendant's command, and lay on her stomach. V.C. testified that "he couldn't get it in. So he had some . . . lotion or something in the back seat, and tried to get it in from the back. But I don't think it -- I'm not sure if he did or not, because at that time I didn't care. I just gave up." The Defendant then told her to lie on her back. Eventually, V.C. put her clothes back on, and the Defendant dropped her off at her mother's house. Additionally, V.C. testified that the Defendant said he did not give a f_ _ _ if she reported the incident.

Once at her mother's home, V.C. testified, she went into the bathroom, bathed, and then went to sleep on the floor of her son's bedroom. The next morning, V.C. went to her sister's home and told her son and her nieces what had occurred. V.C.

6

further testified that she also went to the Defendant's mother's home and told her what had happened. According to V.C, the Defendant's mother begged her not to report the incident at that time. Eventually, V.C. checked herself into Huey P. Long Medical Center. V.C. denied having sex with the Defendant prior to the date of the offense.

B.S., V.C.'s niece, testified that prior to V.C. being admitted to the hospital, V.C. said she had been raped and indicated that the person who raped her lived down the street. B.S. testified that V.C. was not "acting herself" at that time, and she had a busted lip. B.S. further testified that she told V.C. not to report the incident.

C.S., V.C.'s niece, testified that V.C. told her that a man had driven her to a location, busted her lip, and raped her. C.S. stated that when V.C. spoke to her about the incident, she was scared and crying.

Candi Christophe, a social work supervisor at Huey P. Long Medical Center who was qualified at trial as an expert Clinical Mental Health Social Worker, testified that V.C. was voluntarily admitted to the hospital on March 13, 2004. During Christophe's first session with her, V.C. reported that she had been raped. Pointing out that delayed reporting of rapes was not unusual, Christophe testified that she encouraged V.C. to file a report. Christophe went on to testify that there was no doubt in her mind that V.C. had been raped and that it was "very obvious to all in her body language, her verbal and non-verbal cues, that she had been traumatized." Christophe stated that she diagnosed V.C. as suffering from post-traumatic stress disorder.

Officer Joseph Simms, Jr. testified that he was dispatched to Huey P. Long Medical Center on March 18, 2004. On that day, V.C. told him that she had been

7

taken to a wooded area in a vehicle and raped by a man known as J.W. She further stated that the man struck her in the mouth and told her that if she tried to get away, he would hurt her very badly. Officer Simms testified that at the time of the report, V.C. was upset and appeared scared.

Detective Rodney Howard testified that he spoke to V.C. on or about April 14, 2004. He further stated that when he interviewed V.C. about the incident, she cried, became very emotional, and could not go into detail about what had happened to her. She did, however, tell him that she was attacked by J.W. V.C. later told Detective Howard about the rape, and he accompanied her to the location where the alleged offense occurred, which was located approximately three blocks from the home of V.C.'s mother. Detective Howard testified that he determined that the Defendant was J.W. and that he subsequently compiled a photographic lineup from which V.C. selected the Defendant. Detective Howard stated that V.C. indicated she knew the Defendant prior to the attack.

Sergeant William Bates testified that he collected five used condoms, three torn condoms, and three condoms that had not been opened from the area where the alleged offense occurred. He determined that the area was two to three blocks from V.C.'s mother's home, and the Defendant's home was a couple of blocks farther than V.C.'s mother's home.

Connie Brown, an employee of the North Louisiana Crime Lab, testified that sperm found on one of the condoms submitted to the lab was consistent with the Defendant's DNA. However, she was unable to find DNA matching that of V.C., which she testified was not surprising, since the condoms were exposed to the elements for an extended period of time and were degraded and falling apart when

8

she received them. Brown additionally stated that she could not determine when the DNA was placed inside the condom.

The Defendant testified that he met V.C. during the summer of 2003, when she casually walked into his driveway and asked him to drive her to her sister's house. He did so, and after V.C. visited her sister, the Defendant testified that he and V.C. drove to Browns Bend Road, where the two prepared to engage in sexual intercourse. However, the Defendant testified that he did not have any condoms with him, so he went to a store that provided free condoms, and the two returned to the area where they had previously been. However, according to the Defendant, V.C. told him that she did not feel safe, so they did not engage in sexual intercourse.

The Defendant denied forcing V.C. to have sex with him in February of 2004. However, he testified that he had sex with V.C. twelve to thirteen times in different areas of Alexandria; an overwhelming majority of the time the two had sex in the Defendant's car. The Defendant further testified that sometimes he gave V.C. money in exchange for sex. He testified that after the two engaged in sexual intercourse, he would drive V.C. to a place where she bought drugs, and then, he would take her home. In the past, the Defendant had been convicted of carnal knowledge of a juvenile, manslaughter, forgery, and forcible rape.

FORCIBLE RAPE

The State was required to prove the Defendant had anal, oral, or vaginal sexual intercourse, regardless of the degree of penetration, with V.C. V.C. testified that the Defendant "[k]ept trying, and trying, and trying" to have sex with her, but he could not sustain an erection. She was subsequently questioned regarding whether penetration occurred, as follows:

9

Q Okay. All right. And then did he penetrate you?

A He went on, and I guess he did it.

Q Did he?

A I guess so. He -- he didn't say nothing else about. . . .

Q Well, you were there. Did he put -- this is very important. Did he put his penis in your vagina?

A Yeah. Yeah.

Q Okay.

A Yeah.

Q There was penetration?

A Yeah. Okay. Yeah.

Based on this testimony, we find that the State proved that the Defendant penetrated V.C.'s vagina.

The State must also prove that V.C. did not consent to have sexual intercourse with the Defendant. V.C. was questioned as follows:

Q Did you ask him not to do it?

A Yes, sir.

Q What did he say to that?

A I asked him what was wrong with him.

Q Huh?

A I asked him did he know what he was doing?

Q And? What did he say?

A He didn't care.

Q He didn't care. Did he tell you to take your clothes off?

A Yeah.

10

. . . .

Q    So you took off your clothes?

A    I had to.  I didn't have no choice.

We find, based on this testimony, that V.C. did not consent to sexual intercourse with the Defendant.

The State must also prove that V.C. was prevented from resisting by force or threats of physical violence.  V.C. testified that the Defendant hit her in the mouth once and threatened to f_ _ _ up her face.

In *State v. Touchet*, 04-1027 (La.App. 3 Cir. 3/9/05), 897 So.2d 900, the defendant was convicted of aggravated rape.  The victim testified that she met the defendant and, shortly thereafter, rented a house for the two to live in.  Two weeks after the victim and the defendant moved in together, the two went to an outing and returned home.  At that time, the defendant told the victim she had been acting like a whore, and he locked the front door.  The defendant met the victim in the bedroom and told her, "[i]f you want to act like a whore, I'm going to treat you like a whore."*Id*. at 903.  He then told the victim to remove her clothing.  The victim said no, and the defendant pulled out a pocket knife.  The victim testified that she did not remember the knife being very close to her, but the defendant came to her with it.  The victim further stated that she believed the defendant was capable of using the knife and that she was scared that if she tried to get away, the defendant would catch up with her.

After refusing once or twice, the victim removed her own clothing.  The defendant then put the knife down and approached her.  The two subsequently had sexual intercourse.  At trial, the victim testified that she did not want to have sex.  She

11

testified that she resisted the defendant verbally, but did not get up and leave the room because she was scared. On cross-examination, the victim stated she did not resist the defendant in any way other than saying no.

This court then discussed *State v. Parish*, 405 So.2d 1080 (La.1981), as follows:

> [T]he supreme court reversed the defendant's conviction of attempted aggravated rape and substituted the conviction of attempted forcible rape, stating:
>
> . . . .
>
> The evidence in this case is sufficient to warrant a jury's finding that defendant actively desired to commit an act of sexual intercourse without the victim's consent by preventing her resistance with a threat of great harm under circumstances where the victim reasonably believed resistance would have been futile. The victim testified that the defendant obtained entry to her apartment under false pretenses, seized her by the throat, clasped her mouth, said he wanted to make love, warned that he would kill her if she screamed, and dragged her toward a bedroom. She stated that he outweighed her about 130 pounds and was almost a foot taller.
>
> The evidence does not constitutionally justify, however, the jury's election to return a verdict of aggravated rape rather than forcible rape. Within the range of attempted coercive sexual acts, the offense in this case clearly falls among those involving a minimal use of force. Although the victim was frightened and perhaps disturbed psychologically, she was released substantially unharmed. The defendant abandoned his attempt for no reason other than a change of mind. He did not fondle the victim or subject her to any sexual indignity. The evidence viewed from the perspective most favorable to the prosecution does not support a finding beyond a reasonable doubt that the degree of force employed warrants punishment in the greater degree as attempted aggravated rape, rather than in the lesser degree as attempted forcible rape.

*Touchet*, 897 So.2d at 905-906.

12

The court went on to distinguish *Parish*, stating that the defendant in *Touchet* did not use as much force as the defendant in *Parish*. In *Parish*, the victim and the defendant engaged in a struggle, during which the victim lost a contact lens, tore her blouse, and received a small cut near her eye. The defendant also choked the victim and threatened to kill her. In *Touchet*, the defendant held a knife toward the victim and told her to remove her clothing. The victim did not testify that the defendant verbally threatened her during this incident.

The court then discussed *State v. Powell*, 438 So.2d 1306 (La.App. 3 Cir.), *writ denied*, 443 So.2d 585 (La.1983). In *Powell*, the court held that the evidence was insufficient to uphold the defendant's conviction for forcible rape. The defendant in *Powell* picked up the victim on the street corner while she was waiting for a ride. After the victim got into the car, the defendant brought the victim to a secluded area and threatened to kill her if she refused to have sexual intercourse with him. The defendant struck the victim several times in the face while threatening to kill her with a weapon that he claimed was underneath the seat. However, the victim testified that she never saw the weapon. After being struck and threatened, the victim removed her pants and engaged in sexual intercourse with the defendant. In reversing the defendant's conviction, this court stated:

> The only evidence concerning the act of sexual intercourse is the testimony of the victim. There was no other factual evidence to corroborate her testimony. Nevertheless, we find that any rational trier of fact could have reasonably concluded that the evidence taken in the light most favorable to the prosecution, showed beyond a reasonable doubt sufficient proof of the element. Under the Jackson test we feel that the jury (fact finder) could have reasonably accorded great weight to the victim's testimony to the extent that this element of the crime was proven beyond a reasonable doubt.

> There was no showing, however, of resistance on the part of the victim and very little evidence that she was prevented from resisting by

13

force or threats of physical violence under the circumstances. Construing the evidence in a light most favorable to the prosecution, we do not feel that any rational trier of fact could find beyond a reasonable doubt that there was force or threats of physical violence where the victim reasonably believed that resistance to the act would be to no avail . . ..

After a thorough review of the record we find that the evidence is insufficient to convince a reasonable fact finder beyond a reasonable doubt that the victim was prevented from resisting the act by threats of force or physical violence under the circumstances. We recognize that there are cases holding that the victim's testimony is sufficient to establish an essential element of a crime. *State v. Rives*, 407 So.2d 1195 (La.1981). However, it is clear, that the victim's testimony in this case, even when construed in a light most favorable to the prosecution, leaves reasonable doubt in the minds of reasonable men as to the commission of an essential element of the crime. Therefore, the State has failed to carry it's burden of proof under *Jackson v. Virginia*, *supra*., as to an essential element of the crime.

*Id*. at 1308-09.

The court, in *Touchet*, found that while the victim saw the weapon the defendant possessed, she did not testify that the defendant actually verbally threatened her with it. The court then noted that the victim in *Powell* was struck several times in the face and the victim in *Touchet* did not testify she was struck. The court further noted that like *Powell*, there was little showing of resistance on the part of the victim and little evidence that she was precluded from resisting by force or threats of force. The victim stated that the defendant pulled the knife out and opened it but did not remember the knife being very close to her, that she removed her own clothing, and that the defendant put the weapon down before approaching her. The victim also stated that other than saying "no" to removing her clothing, she offered no other resistance to the attack. In *Powell*, the defendant and the victim were, at most, acquaintances while in *Touchet*, the victim and the defendant were involved in an intimate relationship both before and after the incident. The court, in *Touchet*,

14

went on to find that the evidence failed to support the elements necessary for convicting the defendant of forcible rape.

In *State v. Schexnaider*, 03-144, p. 11 (La.App. 3 Cir. 6/4/03), 852 So.2d 450, 458, the court quoted the following from Judge Stoker's dissent in *Powell*, 438 So.2d 1306, 1310:

> The victim in this case stated that she submitted because the defendant threatened to kill her if she did not. Although she did not state in so many words that she did not resist because she believed that resistance would not prevent the rape, that is the clear meaning of her testimony. If that meaning is not given to her testimony, it is tantamount to requiring a person threatened with rape to either be faced with a dangerous weapon or to resist to the utmost and, in either case, subject themselves to the possibility of great physical harm or death. This is resistance in the context of aggravated rape. Forcible rape requires less. First and Fourth Circuits have found the majority opinion in *Powell* unpersuasive. *See State v. Savario*, 97-2614 (La.App. 1 Cir. 11/6/98), 721 So.2d 1084, *writ denied*, 98-3032 (La.4/1/99), 741 So.2d 1280 and *State v. Burger*, 531 So.2d 1163 (La.App. 4 Cir.1988), *determination sustained by*, 541 So.2d 842 (La.1989), *on remand*, 550 So.2d 1282 (La.App. 4 Cir.1989), *writ denied*, 556 So.2d 1276 (La.1990)."

The court went on to state that it agreed with Judge Stoker's dissent in *Powell*. Likewise, in the present case, we agree with Judge Stoker's dissent and choose to follow the previous decision in *Schexnaider,* as we find that the evidence was sufficient to prove that V.C. was prevented from resisting by force or threats of physical violence.

We must now determine whether the State proved that V.C. reasonably believed that resistance would not prevent the rape. V.C. testified that the Defendant hit her in the face, busting her lip. V.C. testified that she was scared, afraid, and crying at the time the Defendant told her to take off her clothes. She testified that the Defendant was hollering and very angry and that she took her clothes off because she felt as though she did not have a choice and she could not pull the Defendant off of

15

her; she thought the Defendant was going to kill her. Additionally, the two were in a secluded area by a vacant home in the Defendant's vehicle. We find the State proved that V.C. reasonably believed that resistance would not prevent the rape.

The Defendant argues that V.C.'s testimony is so implausible that her credibility merits consideration. The Defendant states that V.C. was an admitted cocaine and marijuana abuser, a convicted felon, and a psychiatric patient on numerous drugs who admitted to having paranoid delusions as well as homicidal ideas about her sister.

V.C. admitted herself to the hospital two weeks after the incident and sought treatment because she had feelings that she would kill herself or someone else. V.C. had been receiving psychiatric treatment since she was thirty-one years old, and she testified that, prior to the rape, she suffered from depression. V.C. also admitted that she told the doctor that she wanted to kill her sister. However, she testified that she said this out of anger and that she would not actually harm her sister. Additionally, she testified that she probably used cocaine and marijuana just prior to admitting herself to the hospital, but she was very evasive as to whether she was working or how she was able to afford drugs around the time of the alleged offense.

The State had Christophe read the following from V.C.'s medical records dated March 13, 2004:

> the patient was -- had active suicidal ideas. She was depressed. Poly-substance abuse. Patient states that she's homeless. States that she was raped two to three weeks ago by someone she knows. Patient very tearful when talking about it. Placed on continuous observation for safety. She denied auditory visual hallucinations. Feels hopeless and helpless.

Christophe also read from records dated March 22, 2004, as follows:

16

> She was on close observation for suicidal ideation. Client is being observed for any signs of self-harm. Client not showing any signs of self-harm. She gets emotionally upset when talking about the rape that she just went through. Appears to be coping pretty well.

She further testified regarding notes from March 25, 2004, as follows:

> Client observation: She's being observed for suicidal ideation and depression. Intervention: Client was encouraged to and -- to inform staff of any thoughts of self-harm. She became very tearful. States she wanted to go home, and then talked about the rape and being afraid to go.

Christophe additionally read the following from March 26, 2004:

> The client is very upset, tearful, stressed. She is unsure if she wants to return home. Patient and family is afraid that the -- that the -- that -- patient and family is afraid that the man who raped her will become -- will come after her. Unsure about -- unsure about bed status at Rainbow. . . . Will report to Dr. Puvvada and follow recommendations.

Christophe further testified that Dr. Puvvada's discharge summary indicated that although V.C. had been depressed for two years, she was not taking medication for depression at the time she checked herself into the hospital. However, she had previously taken Paxil and Zoloft. She went on to testify that V.C.'s medical records further indicated that her depression worsened because of anger, she had homicidal ideas about her sister Angie, she sometimes felt outraged and tearful, and she had attempted suicide the previous week by overdosing on Tylenol. Additionally, V.C. had jumped out of a moving vehicle, had hallucinations the previous night that someone was calling her, saw black shadows running, had command hallucinations, and had possible paranoid delusions that her family was trying to destroy her.

"It is not the function of an appellate court to assess credibility or reweigh the evidence. Appellate review for minimal constitutional sufficiency of evidence is a limited one restricted by the standard developed in *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). As a reviewing court is not called upon to

17

decide whether it believes the witnesses, we cannot second guess the credibility determinations made by the trier of fact.

We find that the issues pointed out by the Defendant do not contradict V.C.'s testimony that she was raped by him. Although V.C. has a history of depression, attempted suicide, and was somewhat mentally unstable at the time she entered Huey P. Long Medical Center, the trier of fact chose to believe V.C.'s testimony over that of the Defendant.

We find that the State proved beyond a reasonable doubt that V.C. was forcibly raped. Thus, the Defendant's conviction for forcible rape is affirmed.

SECOND DEGREE KIDNAPPING

To support a conviction for second degree kidnapping, the State was required to prove that the Defendant enticed or persuaded V.C. to go from one place to another and that she was physically injured or sexually abused by the Defendant during that time.

The testimony indicated that the Defendant offered V.C. a ride and passed the street where the residence to which she requested to be taken was located. He then took V.C. to an area near a vacant house against her will, busted her lip, and forcibly raped her.

We find the evidence, when viewed in the light most favorable to the prosecution, is sufficient to support the conviction for second degree kidnapping beyond a reasonable doubt.

**ASSIGNMENT OF ERROR NO. 2:**

In his second assignment of error, the Defendant contends that he received ineffective assistance of counsel at trial, as counsel failed to properly investigate his

case and issue subpoenas for critical witnesses. He also asserts that counsel was ineffective for failing to subpoena his work records and phone records. Additionally, he argues that counsel failed to subpoena his nephew, who could have testified as to the previous relationship between the Defendant and V.C. The Defendant also asserts counsel's failure to investigate cannot be considered trial strategy and the prejudice suffered by him is evident in the record.

> Under the standard for ineffective assistance of counsel set out in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), adopted by this court in *State v. Washington*, 491 So.2d 1337, 1339 (La.1986), a reviewing court must reverse a conviction if the defendant establishes: (1) that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms; and (2) counsel's inadequate performance prejudiced defendant to the extent that the trial was rendered unfair and the verdict suspect.

*Leger*, 936 So.2d at 142-43.

We note that the Defendant testified at trial that he had his work records and that his cell phone records were on defense counsel's table. Additionally, during trial, defense counsel informed the court that he wanted to call the Defendant's nephew as a witness and that the nephew would testify regarding the Defendant's employment records and his past relationship with V.C. However, the trial court ruled that the witness could not be called, as the State was not given notice that he would testify, and he was not placed under the rule of sequestration. We cannot determine from the record what trial counsel did, or did not do, in this matter or the basis for any decision made by counsel. In sum, we find the record before us insufficient to make definitive findings as to the Defendant's claims of ineffective assistance of counsel. Thus, we find that the Defendant's claims should be relegated to post-conviction relief proceedings, where, if warranted, a full evidentiary hearing may be conducted to develop a sufficient record on the issues raised. *See Schexnaider*, 852 So.2d 450.

19

**CONCLUSION:**

     The Defendant's convictions are affirmed. However, we amend the Defendant's sentence for forcible rape to reflect that he is not eligible for diminution of sentence, pursuant to La.R.S. 15:537 and instruct the trial court to note the amendment in the court minutes. Additionally, the case is remanded, and the trial court is instructed to inform the Defendant of the Article 930.8 prescriptive period by sending appropriate written notice to him within ten days of the rendition of this opinion and to file written proof that he received the notice in the record.

**AFFIRMED AND REMANDED WITH INSTRUCTIONS.**

THIS OPINION IS NOT DESIGNATED FOR PUBLICATION. Rule 2-16.3, Uniform Rules, Courts of Appeal.

20